2002 WY 173

Thomas JENSEN, Appellant (Defendant),

v.

FREMONT MOTORS CODY, INC.,
a Wyoming corporation,
Appellee (Plaintiff).

Fremont Motors Cody, Inc. a Wyoming
corporation, Appellant (Plaintiff),

v.

Thomas Jensen, Appellee (Defendant).

Nos. 01–210, 01–211.

Supreme Court of Wyoming.

Nov. 27, 2002.

Daniel M. Fowler of Fowler Schimberg & Flanagan, P.C., Denver, CO, Representing Thomas Jensen.

S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WY; and Timothy H. Scott of Fisher & Phillips, New Orleans, LA, Representing Fremont Motors Cody, Inc.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] Thomas Jensen (Jensen) appeals the district court's denial of his request for attorney fees, interest, and costs pursuant to Wyo. Stat. Ann. § 27-4-104 (LexisNexis 2001). Specifically, Jensen contends that the damages awarded to him at trial under his breach of employment contract counterclaim against his former employer Fremont Motors Cody, Inc. (Fremont) are wages and, as such, the district court was required to award him attorney fees, interest, and costs. Fremont cross-appeals the district court's denial of its motions for judgment as a matter of law and its combined motion for a new trial based on the contention that Jensen's conduct clearly showed that he waived any breach of contract. Further, Fremont asserts that the district court's jury instruction pertaining to waiver misled and confused the jury.

[¶2] We affirm.

## ISSUES

[¶3] Collectively, the parties present five issues on appeal:

I. Whether the district court erred in denying Fremont's motions for judgment as a matter of law and combined motion for a new trial based on the issue of waiver.

II. Whether the district court erred in failing to give the jury Fremont's proposed instruction pertaining to contract waiver, and giving the jury a modified waiver instruction.

III. Whether the district court erred as a matter of law in refusing to allow the statutory remedies without a breakdown between Jensen's wage claim and non-wage claims.

IV. Whether the district court erred as a matter of law in refusing to allow the statutory remedies because it deemed Jensen's damages to be unliquidated.

V. Whether the district court erred as a matter of law by refusing to award "all costs of suit."

## FACTS

[¶4] Jensen and John Owen (Owen) met in 1984 while both worked at Greiner Ford in Casper. The two became good friends and remained so for many years. Jensen was an outstanding salesman at Greiner Ford selling three times the amount of an average salesman. In 1992, Owen and his two partners, Chuck and Jim Guschewsky, purchased Fremont. Owen left Greiner Ford upon the purchase of Fremont and moved to Cody. At this time, because Jensen was such an outstanding salesman, Owen offered Jensen a job as a salesman at Fremont. Jensen did not accept Owen's offer of employment. Rather, Jensen left Greiner Ford accepting employment in Denver. Nevertheless, Owen was not deterred by Jensen's rejection and extended a standing offer to Jensen for employment with Fremont.

[¶5] Subsequently, Jensen and Owen remained close friends keeping in contact with each other. In the numerous visits and conversations that the two had, Owen repeatedly offered Jensen employment as a salesman, which Jensen rejected for various reasons. However, in January of 1995, Jensen and Owen began to have serious discussions about Jensen coming to work at Fremont. On February 28, 1995, Owen wrote a letter for Jensen to present to banks in order to secure financing on a house. The letter, in

* Chief Justice at time of expedited case conference.

relevant part, stated: "This is to advise you that Tom Jensen's employment at Fremont Motors Company in Cody, WY in a sales position will be commission and partial guarantee. In the event that his commissions fall short of $8,000 per month, Fremont Motor Company will make up the difference. Fremont Motors will also pay for his move." No other documentation of this agreement exists, or, if it does exist, it was not presented at trial.[1] Jensen began his employment as a sales manager on April 4, 1995.

[¶ 6] Jensen worked as the sales manager of Fremont for approximately 28 months, officially resigning on July 13, 1997. During his employment, Jensen was paid in varying amounts every month. · Only on six occasions did Jensen's monthly salary meet or exceed $8,000. Jensen never complained about· repeatedly being shorted to the other partner of Fremont, Chuck Guschewsky, or to Jeanne Orkney, the company's comptroller. Jensen claimed that he did complain to Owen and that Owen repeatedly told him to "hang tough with me" and things would get better. Owen denies that such conversations ever took place.

[¶ 7] Jensen, like many other Fremont employees, was given what the parties referred to as an accounts receivable account (A/R account). This arrangement allowed Jensen to make personal charges with businesses around Cody on accounts, which listed Fremont as the debtor. Fremont would pay these charges and then deduct the amount from Jensen's paycheck at the end of the month. When Jensen received his paychecks, a sheet would be attached to the paycheck which itemized the charges attributed to his A/R account. Also attached to the check was a statement of how Jensen's salary was calculated that period based on each vehicle sold, the profit on each vehicle, and his 6% commission for the vehicle. Jensen detached and discarded these statements.

[¶ 8] Over the term of his employment, Jensen's relationship with Owen deteriorat-

ed, eventually resulting in Jensen's resignation on July 13, 1997. A balance of $4,883.18 remained on Jensen's A/R account when he departed. As Fremont and its accountant were going over the company's books at year end, they discovered that Jensen's A/R account was still in existence. Chuck Guschewsky contacted Jensen at that time to determine if Jensen intended to pay off the account. Jensen assured him that he would pay what he owed and requested backup documentation. However, Jensen never made any payment to Fremont. On April 21, 1998, Fremont filed an action against Jensen in Park County Court for the collection of the A/R account. Jensen then filed a counterclaim asserting that he was entitled to additional wages based on the $8,000 guarantee and other contract damages. Jensen further claimed that should he prevail in showing wages justly due, he would be entitled to interest at the rate of eighteen percent (18%) per annum from the date of termination, reasonable attorney fees, and all costs of suit pursuant to Wyo. Stat. Ann. § 27–4–104..

[¶ 9] At the time of trial, Fremont claimed $4,857.09 was owed on Jensen's A/R account. Jensen claimed $66,155.16 in damages including wages, moving expenses, and losses on the sale of various homes. After a five-day trial, the jury found that Jensen owed $2,912.77 on his A/R account. Additionally, the jury found that Jensen had a contract with· Fremont guaranteeing him $8,000 a month, that Fremont breached that contract, and that Jensen was ·entitled to damages in the amount of $20,496. Because Jensen was awarded damages on his breach of employment contract counterclaim, Jensen made a motion for the award of attorney fees, interest, and costs. The district court denied this motion after a brief hearing. This appeal followed.

[¶ 10] In addition, Fremont cross-appeals denial of its motions for judgment as a matter of law based on waiver of contract issues. Fremont made two motions for judgment as

---

1. Owen argues that the agreement referenced in the letter was for a salesman position that Jensen eventually rejected only to later accept a position as sales manager, and the $8,000 was simply an estimate of what Jensen would make and that Jensen would be paid 6% commission. Jensen argues that the only agreement that was ever reached was for the sales manager position.

a matter of law during the course of the proceedings. The first came at the close of Fremont's case in chief. The second motion occurred at the end of the proceedings. This second motion was for judgment as a matter of law or in the alternative for a new trial. The second motion asserted that Jensen failed to present sufficient evidence to create a triable jury issue, that Jensen waived any right he had to receive a minimum of $8,000 per month, and that the jury's verdict was against the weight of evidence. These motions were denied by the district court.

## STANDARD OF REVIEW

[¶ 11] Our standard of review related to judgment as a matter of law is well known and well stated in *John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1356 (Wyo.1998) (citations omitted):

Our standard of review is the same whether it arises in the procedural context of a motion for judgment as a matter of law prior to the submission of the case to the jury (formerly, a motion for a directed verdict) or in the context of a renewed motion for judgment as a matter of law after the jury has returned a verdict (formerly, a motion for judgment notwithstanding the verdict). We undertake a full review of the record without deference to the views of the trial court. The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized. Since a judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it should be cautiously and sparingly granted.

Further, in *Poletis* our standard of review for a motion for a new trial on the ground that the verdict is against the weight of the evidence was set forth. "In contrast, a trial court is vested with broad discretion when ruling on a motion for new trial, and we will not overturn the court's decision except for an abuse of that discretion." *Poletis*, 954 P.2d at 1357.

[¶ 12] The standard of review that we utilize for alleged jury instruction error is:

In considering the validity of instructions to a jury, we must determine whether the instructions, taken as a whole, adequately advise the jury of the applicable law. Proper instructions should be clear declarations of the pertinent law. The ruling of a trial court on an instruction will not constitute reversible error unless there is a showing of prejudice, which connotes a demonstration by the complaining party that the instruction misled or confused the jury with respect to the applicable principles of law.

*Ormsby v. Dana Kepner Co. of Wyo. Inc.*, 997 P.2d 465, 471 (Wyo.2000) (quoting *L.U. Sheep Co., v. Board of County Comm'rs of County of Hot Springs*, 790 P.2d 663, 672 (Wyo.1990) (citations omitted)).

[¶ 13] We review determinations concerning requests for an award of attorney fees by applying an abuse of discretion standard. *Cowardin v. Finnerty*, 994 P.2d 335, 337 (Wyo.1999) (citing, *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo.1997); *Goff v. Goff*, 844 P.2d 1087, 1092 (Wyo.1993)). An abuse of discretion is found only when a court acts in a manner which exceeds the bounds of reason under the circumstances. In addition, the ultimate issue is whether the trial court could reasonably conclude as it did. *Cowardin*, at 337.

[¶ 14] We also review apportionment of costs issues for an abuse of discretion. The decision of the trial court will not be reversed absent proof of such abuse. *Carlson v. Carlson*, 888 P.2d 210, 216 (Wyo.1995).

## DISCUSSION

### Denial of the Motions for Judgment as a Matter of Law and New Trial

[¶ 15] As stated earlier, Fremont made two motions for judgment as a matter

of law, the latter motion being coupled with a motion for a new trial in the alternative. Fremont contends that the evidence presented at trial results in the drawing of only one conclusion, that Jensen waived his contract claims.

[¶ 16] We have defined waiver as the intentional relinquishment of a known right that must be manifested in some unequivocal manner. *Baldwin v. Dube*, 751 P.2d 388, 392 (Wyo.1988). "While the necessary intent for waiver may be implied from conduct, the conduct should speak the intent clearly." *Murphy v. Stevens*, 645 P.2d 82, 93 (Wyo.1982) (citing *Bankers Trust Co. v. Pacific Employers Ins. Co.*, 282 F.2d 106 (9th Cir.1960), cert. den. 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961)). In addition, we have recognized that the three elements of wavier are: 1) an existing right; 2) knowledge of that right; and 3) an intent to relinquish it. *Jackson State Bank v. Homar*, 837 P.2d 1081, 1086 (Wyo.1992) (citing *Ramirez v. Metropolitan Life Ins. Co.*, 580 P.2d 1136, 1138 (Wyo.1978)). The only element of waiver truly at issue is Jensen's intent to waive his right to make a claim for his asserted wage guarantee. The party asserting waiver carries the burden of proving it. *Murphy*, at 93. Therefore, Fremont had the obligation of proving that Jensen explicitly intended to relinquish his right to payment under the contract.

[¶ 17] Fremont's theory of waiver is based entirely on the assertion that Jensen accepted his paychecks without resigning or complaining until Fremont sued for the A/R account balance. Fremont calls attention to many instances of Jensen failing to assert that he was underpaid to support the proposition that he waived any right to claim he was shorted. In essence, Fremont contends that it is inconceivable that Jensen would have been underpaid for 22 out of 28 months and never assert his right to full payment during that time period.

[¶ 18] In particular, Fremont points to testimony that Jensen failed to complain that he had been underpaid after receiving his first check, even though his first paycheck came at a time when Jensen had not yet moved his family to Cody and Jensen had not yet closed on his house. Fremont also proffers in support of its contention Jensen's failure to mention the shortage to Owen, Orkney, and Chuck Guschewsky, the company's majority owner, along with Orkney's testimony that Jensen never saved the backup documentation pertaining to his commission and A/R account charges. Fremont also directs this court to the fact that Jensen never asserted that the shortfall in wages could be offset against any amount that he owed on the A/R account. Finally, Fremont offers Owen's testimony of Jensen's request in May of 1997 that he needed to make at least $6,500 a month or his wife was going to move back to Denver. Nevertheless, our review of the record indicates that these matters, besides not clearly speaking to Jensen's alleged intent to waive, are all matters in dispute.

[¶ 19] For example, we note that evidence presented by Jensen showed that Jensen and Owen were close personal friends, and that Jensen felt an obligation to help Owen with his newly acquired dealership. Jensen also testified that he didn't complain about the unpaid wages to people other than Owen because he valued his friendship with Owen and because Owen assured him that things would get better. Further, Owen asked Jensen not to discuss the monthly guarantee with others. Finally, Owen suggested that over time Jensen might become a part owner in the business. Obviously, these facts permit the drawing of more than one inference. Moreover, as previously recognized, Fremont has the applicable burden of proof with respect to the issue of intent. *Murphy*, 645 P.2d at 93. Therefore, it was properly left to the jury to decide which inference to utilize. Accordingly, we hold that although the evidence is conflicting, such evidence was certainly sufficient to warrant a conclusion by the jury that Jensen did not waive his contract claims.

[¶ 20] Indeed, even if we were to expressly disregard Jensen's testimony, we would not find waiver. A thorough explanation of "intent to waive" is given in 28 Am.Jur.2d *Estoppel and Waiver* § 209 (2000). This section explains, "mere silence is no waiver unless there is an obligation to speak, or if the

silence or inaction is for so long a period as to show intention to yield a known right" (footnotes omitted). We cannot point to a single instance where we have held that mere silence and delay in asserting a claim without more constitutes the *unequivocal* manifestation of intent required for a claim of waiver. To the contrary, we have held that simply failing to commence an action sooner does not mean that a plaintiff waives any right that he had. *Flygare v. Brundage,* 76 Wyo. 350, 302 P.2d 759, 764 (1956). As stated above, Jensen offered a wide range of reasons why he did not earlier commence an action against Fremont.

[¶ 21] Furthermore, a portion of Jensen's claim was brought under the wage act for wages due. *See* Wyo. Stat. Ann. § 27–4–507 (LexisNexis 2001). In *NL Indus., Inc. v. Dill,* 769 P.2d 920, 925 (Wyo. 1989), we indicated that the interpretation of wage act sections must be in *pari materia* to synthesize the common purpose and intent regarding the collection of unpaid wages. Pursuant to § 24–4–507,[2] an employer must fully pay the wages provided by contract, and payment of any lower amount is unlawful. An employee that sues for wages upon termination and establishes in court the amount justly due is also provided with the right to eighteen percent interest, attorney fees, and all costs of suit. Wyo. Stat. Ann. § 27–4–104(b) (LexisNexis 2001). This statute surely manifests the importance of the right to the prompt, full payment of wages.

[¶ 22] Finally, other jurisdictions have held that waivers of statutory rights are not favored. *Hoehne v. Sherrodd, Inc.,* 205 Mont. 365, 668 P.2d 232, 235 (1983); *Holden & Martin Lumber Co. v. Stuart,* 118 Vt. 286, 108 A.2d 387, 389 (1954); *Worley v. Johnson,* 60 Fla. 294, 53 So. 543, 545 (1910). Further, 28 Am.Jur.2d *Estoppel and Waiver* § 214 (2000) explains that statutory rights should ordinarily be waived only by clear affirmative words or actions. We have held that a person may not generally waive a statutory or constitutional right enacted for the benefit of that person if public interests are jeopardized. *Taylor v. State,* 612 P.2d 851, 861 (Wyo.1980). Public interests are clearly involved here. To hold that remaining at a job when not paid what you are owed waives a right to assert a statutorily given right defies common sense. A person getting less than the agreed wage should not have to affirmatively object to an employer that might fire them in order to benefit from the rights provided by the wage statute.

[¶ 23] Viewing the evidence in the light most favorable to the successful party and giving that party the benefit of all reasonable inferences that may be drawn from the evidence, we hold that the district court did not err in denying the motions for judgment as a matter of law. For the same reasons, we likewise hold that the district court's denial of the motion for a new trial was not an abuse of discretion. Again, there was sufficient evidence to find that there had been no waiver of claim.

### Jury Instruction Issues

[¶ 24] Fremont argues that the waiver instruction given by the trial court misled and confused the jury. The waiver instruction offered by Fremont was identical to an Arizona Civil Pattern Jury Instruction. The instruction as offered by Fremont read:

A party to a contract may waive the other party's duty to perform. "Performance" refers to what a party agreed to do as his part of the contract.

Waiver is an express, voluntary, and intentional relinquishment of a known right, or it is conduct that shows an intentional relinquishment of that right.

*A waiver may be expressly stated by a party, or it may be implied by or inferred from actions taken by a party that are inconsistent with an intention to assert a particular contractual right.*

*Similarly, by knowingly and unconditionally accepting defective performance, a party has waived any objection to it.*

---

2. In relevant part, Wyo. Stat. Ann. § 27–4–507(b) (LexisNexis 2001) provides:
   (b) It shall be unlawful for any employer to pay to any employee a lower wage, salary, or compensation than that provided for or agreed upon by (1) a collective bargaining agreement; (2) a contract between the employer or employee.

If Defendant waived a promised performance, then the Plaintiff is no longer bound to perform on that promise and Defendant is not entitled to damages for that particular non-performance.

Plaintiff has the burden of proving waiver by preponderance of the evidence.

The trial court modified the instruction by eliminating the italicized portions above. Fremont does not complain about the language actually contained in the subject instruction. Rather, Fremont argues that the two paragraphs omitted from its proposed instruction were necessary to adequately instruct the jury.

■ [¶ 25] As stated in our standard of review, proper instructions should be clear declarations of pertinent law. *Ormsby*, 997 P.2d at 471. As we discussed above, the elements of waiver are 1) an existing right; 2) knowledge of that right; and 3) an intent to relinquish it. *Jackson State Bank*, 837 P.2d at 1086. All these elements are present in the instruction as given. Furthermore, the omitted language was merely duplicative. Specifically, when looking at the first italicized paragraph, it essentially restates the immediately preceding paragraph, i.e., that waiver can be express or it may be conduct that shows an intentional relinquishment of a known right.

■ [¶ 26] During deliberations the jury asked, "What constitutes waiver of rights?" Fremont would have us believe that this question shows that the instruction was misleading. However, we cannot say that Fremont has demonstrated that the instruction misled or confused the jury. The duty of the trial court with regard to instructions at the close of evidence and argument is different than its duties upon receiving jury questions during deliberations. *Matter of CH*, 783 P.2d 155, 159 (Wyo.1989). The trial court's denial of further instruction during deliberation does not automatically amount to reversible error. The mere fact that the jury is interested in the definition of terms or more extensive explanation does not mean that the trial court must give further instruction or that there is an error in the original instruction. *In re Matter of CH*, 783 P.2d. at 160. *See also Britton v. State*, 643 P.2d 935, 939 (Wyo.1982).

■ [¶ 27] The instruction as proposed might have been more beneficial to Fremont's case, but the fact that an instruction may have been more precisely drafted or drafted in a way more favorable to a party does not warrant reversal for a new trial. *Betts v. Crawford*, 965 P.2d 680, 686 (Wyo. 1998) (citing *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832 (Wyo.1994)). We hold that the district court did not err in giving the instruction pertaining to contract waiver as modified because it was a comprehensive, balanced, and fundamentally accurate statement of the law. *Betts*, at 686.

### Denial of Statutory Remedies

■ [¶ 28] Jensen contends that the trial court erred by refusing to award the statutory remedies allowed by Wyo. Stat. Ann § 27–4–104 (LexisNexis 2001). That statute reads:

(a) Whenever an employee quits the service or is discharged, the employee shall be paid whatever wages are due him in lawful money of the United States of America, or by check or draft which can be cashed at a bank, within five (5) working days of the date of termination of employment. The employer may offset from any monies due the employee as wages, any sums due the employer from the employee which have been incurred by the employee during his employment. This section does not apply to the earnings of a sales agent employed on a commission basis and having custody of accounts, money or goods of his principal where the net amount due the agent may not be determinable except after an audit or verification of sales, accounts, funds or stocks.

(b) Whenever an employee who has quit or has been discharged from service has cause to bring suit for wages earned and due, and shall establish in court the amount which is justly due, the court shall allow to the plaintiff interest on the past due wages at the rate of eighteen percent (18%) per annum from the date of discharge or termination, together with a reasonable attorney fee and all costs of suit.

Prosecution of a civil action to recover unpaid wages does not preclude prosecution under W.S. 27–4–105.

[¶ 29] Generally, in Wyoming attorney fees are the responsibility of each party. These fees are only recoverable from the opposing party when expressly provided for by statute or contract. *Ahearn v. Tri–County Federal Savings Bank*, 954 P.2d 1371, 1373 (Wyo.1998). In this case, the relevant statute, § 27–4–104, allows for the payment of reasonable attorney fees when an employee *"shall establish in court the amount which is justly due"* (emphasis added).

[¶ 30] Jensen was awarded contract damages, but he did not establish that any or all of these contract damages amount to wages justly due. At trial, Jensen presented evidence consistent with amounts that he asked for in his closing arguments. In closing argument, Jensen's attorney requested $32,592.44 for lost wages, $1,053.20 for the move from Denver to Cody, $2,087.52 for the move from Cody back to Denver, $10,928 for the loss on the sale of his home in Denver prior to moving to Cody, and $19,494 for loss on the sale of his home in Cody after he moved back to Denver. Thereafter, the jury awarded a lump sum of $20,496.

[¶ 31] Clearly, Jensen was seeking contract damages above and beyond past due wages, as the damages related to losses on the sale of his homes or moving expenses after Jensen resigned from Fremont do not qualify as wages in accordance with the wage statute.[3] Proceedings that are outside the scope of the wage claim statute, although related to employment, do not allow for recovery of attorney fees. *NL Indus., Inc. v. Dill*, 769 P.2d 920, 926 (Wyo.1989). Moreover, in *NL Indus.* we found that expenses incurred in defending a separate suit brought by the employer will not support an award of attorney fees. *Id.* In *Scott v. Fagan*, 684 P.2d 805, 812 (Wyo.1984), we determined that when a party failed to establish in court that wages were justly due, he cannot recover attorney fees pursuant to § 27–4–104. It is pure speculation to consider that the contract damages awarded in Jensen's favor were exclusively wages covered under the wage payment statute. Jensen failed to present any evidence to the district court which clarified this issue.

[¶ 32] Additionally, the jury was given a special verdict form prior to deliberation. This form did not provide for a segregation of damages pertaining to wages from any non-wage contract losses, and Jensen did not object to the use of this form. Jensen knew from the date of asserting his counterclaim that he ultimately would be asking for an award of attorney fees. It would have been simple enough for Jensen to request that these claims be separated on the verdict form. Had Jensen done so, wages justly due would have been established for the court.

[¶ 33] Furthermore, even if we were to speculate that the damage award was comprised entirely of back due wages, Jensen would still not have met his requisite burden of proof. Jensen's submitted evidence for an award of attorney fees combined all wage and non-wage claims. "This Court has repeatedly held that segregation of fees between multiple clients and/or multiple claims is required when it is possible." *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 952 (Wyo.2000) (citing *Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911, 925 (Wyo.1989); *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1027 (Wyo.1988)). Implicit in this directive is the requirement that a party must show segregation is impossible before he may recover for claims for which there is no authorization of fee shifting. Jensen made no attempt to show that segregation of the fees for each claim was impossible.[4] As the district court recognized, wages justly

---

3. We have held that relocation benefits that are promised to an employee as a fringe benefit qualify as wages. *NL Indus., Inc. v. Dill*, 769 P.2d 920 (Wyo.1989). Here, the only moving expenses Jensen may have been promised appear to be the moving expenses related to the move to Cody. However, this issue was not addressed in depth at trial.

4. For example, drafting a power of attorney for Margaret Jensen, calling the title company for escrow, and drafting, revising, and finalizing trial exhibits regarding non-wage related claims do not relate to wages.

due and the amount spent on each claim were never established. Under these circumstances, it was not an abuse of the district court's discretion to deny recovery of statutory attorney fees.

[¶ 34] Jensen also contends that the district court erred in denying each of the remedies allowed by the statute because the claim was unliquidated. One of the district court's stated reasons for denying the claim was "The Jensen claim was unliquidated." While the statute does not explicitly require a liquidated claim, as stated previously, the statute does require that the remedies be provided upon establishment of wages justly due. Damages are liquidated if they are certain or by computation made certain. *Blittersdorf v. Eikenberry*, 964 P.2d 413, 416 (Wyo.1998). Here, the amount asserted by Jensen is unliquidated in the sense that we are uncertain as to what the figure for wages justly due is. For instance, according to the statute eighteen percent interest is to be applied to past due wages from the date of discharge. Wyo. Stat. Ann. § 27-4-104(b). In this case, the amount to which interest may be applied cannot be calculated with a simple mathematical calculation. Therefore, the claim of Jensen is unliquidated because uncertainty still exists as to the exact amount of wages past due. Hence, it was not an abuse of discretion to deny the award of interest to Jensen in these circumstances.

[¶ 35] Finally, costs were unknown at common law. Costs, therefore, were never awarded to either party. Costs may only be recovered if authorized by statute and then may be awarded only to parties to the litigation in amounts supported by evidence as having been incurred and reasonable. *Bi-Rite Package, Inc. v. District Court of Ninth Judicial Dist. of Fremont County*, 735 P.2d 709, 712 (Wyo.1987). Again, the applicable statute provides for "all costs of suit," to be awarded, but as we look to the plain language of the statute, we note that the suit referred to is the suit for wages earned and due. As indicated previously, this suit encompassed more than simply wages earned and due.

[¶ 36] We have the same problem with Jensen's request for an award of costs as his request for an award of attorney fees. Besides not establishing the amount of wages justly due, Jensen has not segregated the costs associated with the wage claim from those associated with non-wage claims. Again, it was not an abuse of discretion for the district court to deny all costs of suit in this circumstance.

## CONCLUSION

[¶ 37] Given those reasons set forth above, the judgment of the district court is affirmed.