DAVIS, Chief Justice.
[¶1] A jury convicted Rogelio Rodriguez, Jr. of delivery of a controlled substance. On appeal, he claims his right to due process was violated when the district court admitted into evidence a witness identification that was based on a single photo, rather than a photo array. We conclude that because Mr. Rodriguez did not file a pretrial motion to suppress evidence of the identification, as required by W.R.Cr.P. 12, he failed to preserve his due process claim for appellate review. We therefore affirm.
ISSUE
[¶2] We find a single issue dispositive of Mr. Rodriguez's appeal:
Does Mr. Rodriguez's failure to file a pretrial motion to suppress identification evidence preclude this Court's review of his due process claim?
*402 FACTS
[¶3] On October 20, 2014, Willy Ayers, a Division of Criminal Investigation (DCI) confidential informant (CI), called DCI agent Juliet Fish and informed her he had received an offer to purchase a gram of methamphetamine from Michael Rosacci, an individual known to DCI from other drug investigations. Agent Fish instructed Ayers to set the buy for 7:00 that evening and to meet her at 6:45 in the parking lot of a Cody hotel. She then contacted DCI agent Darrell Steward to assist with the controlled buy.[1]
[¶4] On her way to meet Mr. Ayers, Agent Fish stopped at the DCI office to obtain a photo of Mr. Rosacci. She explained, "We do that on every controlled purchase. We want to positively identify the person we are purchasing drugs from." At about 6:45, she and Steward met with Mr. Ayers and his wife, Jessica Ayers, also a CI, in the hotel parking lot. Pursuant to DCI procedure, the agents searched Mr. and Mrs. Ayers and their vehicle for weapons, cash, and controlled substances. After finding none, Agent Steward fitted Mr. Ayers with a wireless transmitter and provided him with $150 to make the methamphetamine purchase.
[¶5] Mr. Ayers had arranged to meet Mr. Rosacci at a gas station in Cody at 7:00, and Agents Fish and Steward followed in separate vehicles. Agent Steward parked across the highway from the station, while Agent Fish parked at the gas pumps and pretended to fuel her vehicle. The Ayers parked in a parking space at the front of the station, and within a couple of minutes, Mr. Rosacci arrived in a blue minivan and parked on the left side of the Ayers' vehicle.
[¶6] When the van pulled in next to the Ayers' vehicle, Mr. Ayers, who was in the passenger seat, got out and approached the van's passenger side. He discovered the passenger was not Mr. Rosacci and was not a person known to him. He then circled to the driver's side to talk to Mr. Rossaci, who introduced his passenger as "Roy." Mr. Rossaci informed Mr. Ayers that because he had already sold his methamphetamine, the Ayers would need to follow him to Ralston where he could get more.
[¶7] Back in his vehicle, Mr. Ayers informed the agents of the change in plans, and the agents followed the Ayers and Rosacci vehicles to Ralston, a fifteen to twenty-minute drive. When they arrived, the Rosacci and Ayers vehicles pulled into a convenience store parking lot. Agent Fish parked across the highway kitty-corner from the parking lot, and Agent Steward stayed further back but maintained visual and audio contact with the Ayers.
[¶8] Mr. Rosacci and Mr. Ayers remained in their vehicles for a time, visiting through their open windows. Mr. Rosacci eventually exited his van and got into the backseat of the Ayers vehicle, and a short time later his passenger joined him. When Mr. Rosacci's passenger entered the Ayers' vehicle, he introduced himself as "Roy." Agent Fish heard the introduction over the wireless transmitter and also saw the passenger as he stood in the parking lot. She recognized him as Rogelio Rodriguez, an individual with whom she had had numerous contacts during her years in law enforcement. She could not see his face, but she recognized his voice, his stature, his walk, how he acted, and how he conducted himself.
[¶9] Mr. Rodriguez and Mr. Rosacci remained in the Ayers' vehicle and continued to chat until a gray car pulled up to the parking lot. Mr. Rodriguez then exited the Ayers' vehicle and had a conversation with someone in the gray car. After that, Mr. Rodriguez and Mr. Rosacci got in their van and drove to a nearby bar, while the Ayers remained in the convenience store parking lot.
[¶10] At the bar, Mr. Rodriguez left the van and entered the bar through a lit doorway. He remained there for a minute or two and then returned to the parking lot, where he spoke with a female at the back of a red truck. Agent Steward was parked about sixty to seventy yards from the bar, and he was able to see Mr. Rodriguez's profile when he entered the bar and his facial features when *403 he exited the bar. He also saw him in the taillights of the red truck. He had not met Mr. Rodriguez, but he had previously seen photographs of him and recognized him from those photographs.
[¶11] After speaking with the female at the back of the red truck, Mr. Rodriguez returned to Mr. Rosacci's van, and the two drove back to the convenience store parking lot. Eventually, at about 8:25 p.m., a white car pulled up to the parking lot. Mr. Rodriguez got into the white car, which drove him back to the bar, where he again met with the woman in the red truck. After that meeting, the white car returned Mr. Rodriguez to the convenience store parking lot.
[¶12] At some point in the back and forth between the convenience store and bar, Mr. Ayers gave Mr. Rosacci the buy money and watched as Mr. Rosacci gave it to Mr. Rodriguez. When Mr. Rodriguez returned from his second trip to the bar, he apologized to Mr. Ayers for the wait and handed him a small plastic baggy containing a gram of methamphetamine. The Ayers then left the parking lot and drove back to Cody.
[¶13] On the return trip to Cody, Agent Fish called Mr. Ayers and instructed him to pull over. She retrieved the wire and methamphetamine, and then they continued on to the hotel in Cody where they had previously met. Once at the hotel, Agent Fish contacted dispatch and requested a photograph of Mr. Rodriguez. Agent Steward then interviewed Mr. Ayers and showed him the photograph of Mr. Rodriguez, and Mr. Ayers identified him as the passenger in Mr. Rosacci's vehicle from whom he had purchased the methamphetamine.[2]
[¶14] On October 31, 2016, over two years after the controlled purchase, the State charged Mr. Rodriguez with one count of delivery of a controlled substance. A two-day jury trial was held from May 31 to June 1, 2017, at which Agents Fish and Steward testified as to their observation of and ability to recognize Mr. Rodriguez during the controlled buy, and Mr. Ayers identified Mr. Rodriguez. Defense counsel cross-examined Agents Fish and Steward on their abilities to observe and recognize Mr. Rodriguez. Defense counsel also cross-examined Agent Steward and Mr. Ayers on the process by which Mr. Ayers was shown a photo of Mr. Rodriguez and asked if he was the person who sold him methamphetamine during the controlled buy. Mr. Rodriguez did not, before or during trial, object to the admissibility of Mr. Ayers' testimony concerning his photo identification.
[¶15] The jury found Mr. Rodriguez guilty, and the district court thereafter sentenced him to a prison term of five to seven years. Mr. Rodriguez filed a timely notice of appeal to this Court.
STANDARD OF REVIEW
[¶16] The dispositive issue in this case is one of waiver. "While the question of waiver is often one of fact, when the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law which we consider de novo. " Verheydt v. Verheydt , 2013 WY 25, ¶ 21, 295 P.3d 1245, 1250 (Wyo. 2013). Because the record is clear and the facts relating to waiver are not disputed, our review is de novo.
DISCUSSION
[¶17] Mr. Rodriguez raises a single issue on appeal. He asserts that Agent Steward *404 used an impermissibly suggestive identification procedure when the agent asked Mr. Ayers to identify Mr. Rodriguez using a single photo rather than a photo array. On that basis, he contends Mr. Ayer's identification violated his right to due process.
[¶18] The State disputes Mr. Rodriguez's due process claim on the merits. It also asserts, however, that because Mr. Rodriguez did not raise his due process claim before the district court, and the claim is neither jurisdictional nor fundamental, he has waived appellate review of the claim. In reply, Mr. Rodriguez offers three arguments. First, he asserts that he adequately preserved his due process argument through cross-examination of witnesses. Second, he contends his failure to raise his due process claim was a reviewable forfeiture, not an unreviewable waiver. Third, he argues his due process claim is of such a fundamental nature that this Court should address it even if it was not properly preserved below.
[¶19] We will first address Mr. Rodriguez's assertion that he preserved his due process claim through his witness cross-examination. We will then turn to the waiver question.
A. Issue Preservation
[¶20] Defense counsel cross-examined Agent Steward and Mr. Ayers concerning the process used to obtain Mr. Ayers' photo identification of Mr. Rodriguez. Agent Steward testified on cross-examination:
Q. Isn't it generally recommended that if you want a victim to identify someone, that you give them an array of pictures rather than just one photograph?
A. A lot of times I believe that comes down to department policy. When I was with the Cody Police Department, say for instance, working a forgery case or something along that line, yes, we did show them a photo lineup, as we referred to it, of similar people then have them pick them out.
Since I have been with the Department of Criminal Investigations, I have never, to my recollection, ever shown a photo array or photo lineup for any of our investigations.
Q. But you have never had any classes in dealing with identifying people, with victims -
A. Identifying victims or -
Q. Identifying the alleged perpetrator?
A. Unless it was at the academy clear back in 1988 or '89, I don't recall any.
Q. You're not that old.
A. Actually, I am.
Q. So you're not familiar with any of the studies that go into the problems with identifying suspects to alleged victims?
A. Well, I am not aware of any official studies but am aware of issues that can arise from that, yes.
Q. Well one of the problems is that sometimes people are shown a photograph and they think it is that person, they get that in their mind and then they make that identification and then sometimes it can be found out that wasn't the right person; isn't that true?
A. I suppose it could happen.
[¶21] Mr. Ayers testified:
Q. On this evening, until you were presented that photograph, you didn't know who he was, did you?
A. Well I was introduced through Mr. Rosacci at the [gas station] in Cody so -
Q. He introduced him as?
A. Roy.
Q. So that was the only person you knew him as was Roy?
A. Yes.
Q. Until you were shown that picture; is that right?
A. Yes.
Q. The picture you were shown had Mr. Rodriguez's name on it; isn't that correct?
A. I can't exactly remember. I just remember it being a mugshot from my experience in, like, I have had a sheriff print out before.
Q. So they told you that that was Mr. Rodriguez?
A. They just asked.
Q. They just asked if it was Mr. Rodriguez?
*405 A. If that identified with the person that was in the vehicle.
Q. And given the name of Mr. Rodriguez?
A. I don't recall. They might have.
Q. So at the time that you were presented that picture, since they told you that that was basically Mr. Rodriguez, that was when you firmed up in your mind that is who this individual was today?
A. No, no, I firmed because I was told his name was Roy. From then on, they asked me if this was guy. I said yes, that is Roy, and they said Rogelio and I think that was about what happened.
Q. They didn't show you any other pictures?
A. Just one of Mr. Rosacci.
Q. You immediately assumed that was the person you saw at the van?
A. They didn't show it to me. They showed me one at the beginning of the interview, another one later, so it wasn't like back-to-back or nothing like that, if that is what you're inquiring.
Q. So they showed you two different pictures?
A. They had two different pictures, one of the defendant, and one of Mr. Rosacci.
Q. Mr. Rosacci was an individual that you had used meth with in the past and he was the one you decided to rat out to the DCI?
A. I guess so, yes, sir.
[¶22] A non-jurisdictional issue is not preserved for appeal unless it is raised before the district court "with at least a minimum effort to present a cogent legal argument." Flood v. State , 2007 WY 167, ¶ 12, 169 P.3d 538, 543 (Wyo. 2007) (quoting Bailey v. State , 12 P.3d 173, 178 (Wyo. 2000) ). Defense counsel's cross-examination reflects an attempt to discredit Mr. Ayers' identification of Mr. Rodriguez. It does not reflect a cogent due process argument to the district court, or even a due process objection. We therefore reject Mr. Rodriguez's contention that his witness cross-examination preserved his due process argument for appeal.
B. Waiver of Appellate Review under W.R.Cr.P. 12
[¶23] Although the State did not base its waiver argument on W.R.Cr.P. 12, the parties' briefing unearthed the question of whether a defendant may seek plain error review of an evidence admissibility question when the defendant did not file a pretrial motion to suppress as required by W.R.Cr.P. 12(b)(3). While this Court has decided a number of cases that involve objections for which Rule 12(b) would require a pretrial motion, we have not previously addressed the propriety of a plain error review of such claims. Given the opportunity to now answer that question, we exercise our discretion to do so in order to clarify the correct disposition of Rule 12"waivers" in this and future cases.[3]
*406 [¶24] W.R.Cr.P. 12 governs pretrial pleadings and motions and the assertion of objections and defenses. It provides, in relevant part:
(b) Pretrial Motions . -- Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial :
(1) Defenses and objections based on defects in the institution of the prosecution;
(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);
(3) Motions to suppress evidence;
(4) Requests for discovery under Rule 16; or
(5) Request for a severance of charges or defendants under Rule 14.
* * * *
(d) Motion Date . -- Unless otherwise provided by local rule, the court may, at the time of the arraignment or as soon thereafter as practicable, set a time for the making of pretrial motions or requests and, if required, a later date of hearing.
* * * *
(f) Ruling on Motion . -- A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
(g) Effect of Failure to Raise Defenses or Objections, or to Make Requests . -- Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (d), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver .
W.R.Cr.P. 12 (emphasis added).
[¶25] Our case law distinguishes between claims that are forfeited and those that are waived. We have explained that
"[f]orfeiture is the failure to make a timely assertion of a right, whereas waiver is the 'intentional relinquishment or abandonment of a known right.' " [ Toth v. State , 2015 WY 86A, ¶ 45, 353 P.3d 696, 710-11 (Wyo. 2015) ] (quoting United States v. Perez , 116 F.3d 840, 845 (9th Cir. 1997) (quoting United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ) ). A waived error is not subject to appellate review. Toth , ¶ 45, 353 P.3d at 710 (citing United States v. Cornelius , 696 F.3d 1307, 1319-20 (10th Cir. 2012) ). As further explained in Perez :
Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the "intentional relinquishment or abandonment of a known right." Olano , 507 U.S. at 733, 113 S.Ct. at 1777 (quoting Johnson v. Zerbst , 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ). Forfeited rights are reviewable for plain error, while waived rights are not. Id .
Perez , 116 F.3d at 845.
Nunamaker v. State , 2017 WY 100, ¶ 9, 401 P.3d 863, 866 (Wyo. 2017).
[¶26] The question is whether the Rule 12(g)"waiver" acts as a waiver that precludes appellate review altogether or as a forfeiture that allows plain error review. On that question, we find discrepancy in our decisions, not in any type of direct answer to the question itself, but rather in our approach to reviewing claims for which Rule 12(b) would have required a pretrial motion.
[¶27] In the case of objections to a criminal information or the manner of the State's charging, we have been clear in treating a Rule 12(g) waiver as a bar to appellate review. See Triplett v. State , 2017 WY 148, ¶¶ 16-21, 406 P.3d 1257, 1261-62 (Wyo. 2017) (objection to duplicitous charge waived where not raised before trial);
*407 Schuler v. State , 2008 WY 47, ¶ 22, 181 P.3d 929, 934 (Wyo. 2008) (same); Huff v. State , 992 P.2d 1071, 1078 (Wyo. 1999) (finding waiver where defendant failed to challenge validity of information below); Cox v. State , 964 P.2d 1235, 1238 (Wyo. 1998) (appeal waived by failure to file pretrial motion to sever offenses). While none of these decisions broached the question of a plain error review, our discussion of the policy reasons for the waiver, at least in the duplicitous charging context, reflects an implicit holding that Rule 12(g) would foreclose such review.
There are obvious reasons behind the rule that a duplicity claim is waived if not raised before trial. "A valid duplicity objection raised before trial will force the government to elect the offense upon which it will proceed," correcting the problem. [ 5 Wayne R.] LaFave, [Criminal Procedure § 19.3(d) ], at 337 [ (4th ed. 2017) ]. It would be "manifestly unfair for a defendant to sit silently by, take his chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack." United States v. Walker , 665 F.3d 212, 228 (1st Cir. 2011). Consequently, failure to challenge a duplicity defect before trial "results in an unreviewable waiver" of the duplicity argument. Id .
Triplett , ¶ 19, 406 P.3d at 1261-62 ; see also Schuler , ¶ 22, 181 P.3d at 934.
[¶28] In contrast, in cases where a defendant has not filed a motion to suppress evidence as required by Rule 12(b)(3), or has offered a different argument in support of the motion on appeal, we have routinely applied a Rule 52 plain error analysis, effectively treating the claim as forfeited rather than waived. See, e.g. , Mersereau v. State , 2012 WY 125, ¶ 35, 286 P.3d 97, 112 (Wyo. 2012) ; Miller v. State , 2009 WY 125, ¶¶ 10, 19, 217 P.3d 793, 798-99, 800-01 (Wyo. 2009) ; Mora v. State , 984 P.2d 477, 479-80 (Wyo. 1999) ; Doyle v. State , 954 P.2d 969, 974-75 (Wyo. 1998) ; Lobatos v. State , 875 P.2d 716, 721 (Wyo. 1994). Notably, while these decisions applied a plain error analysis to claims governed by Rule 12(b)(3), they neither addressed the propriety of that review under Rule 12 nor intimated that a different standard of review had been argued. Indeed, our research found only two cases in which a complete waiver was urged, and we decided each of those cases without answering the question, but at the same time suggesting that an interpretation of Rule 12(g) as a bar to appellate review was well founded. See Hadden v. State , 2002 WY 41, ¶ 20, 42 P.3d 495, 501 (Wyo. 2002) ; Dickeson v. State , 843 P.2d 606, 610-11 (Wyo. 1992).
[¶29] In Hadden , the defendant objected during trial to the admissibility of his statement to law enforcement, claiming he had not waived his right to an attorney. Hadden , ¶ 18, 42 P.3d at 499. The trial court chastised defense counsel for not raising the issue before trial but then proceeded to address and overrule the objection. Id. ¶ 19, 42 P.3d at 500-01. On appeal, we acknowledged Rule 12 's pretrial requirements and waiver provision but concluded the trial court had excused the defendant's noncompliance, and we reviewed the claim as if a proper objection had been made. Id. ¶ 20, 42 P.3d at 501. In so ruling, we cautioned:
By its actions, the trial court determined that Hadden did not waive this issue through his failure to raise it in a timelier manner. However, we do not intend by the rendering of this opinion to establish that such a late motion cannot have the effect of waiving such an issue, even one of constitutional dimensions.
Id. ¶ 20, 42 P.3d at 501.
[¶30] In Dickeson , the State argued the defendant's fourth amendment objection to the admissibility of evidence was waived by his failure to file a pretrial motion to suppress. Dickeson , 843 P.2d at 610. The argument was made under a prior governing rule, and our Court declined to address the argument because of its decision to reverse for ineffective assistance of counsel. Id. at 610-11. In so ruling, however, the Court observed that the argument was persuasive, and even more so under the recently adopted Rule 12(g).
The State contends it is not necessary to determine whether or not the search of Dickeson's purse was valid or whether it fits within one of the exceptions to the warrant requirement. This argument hinges *408 upon the provisions of Wyo.R.Crim.P. 40(e) :
A person aggrieved by an unlawful search and seizure may move the district court for the county in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or * * *. The motion to suppress evidence may also be made in the county where the trial is to be had. The motion shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial. (Emphasis added.)
The argument of the State is that this rule mandates compliance with its terms, and the failure to make the motion as required by the rule results in a waiver of any objection to the search alleged to be illegal. We need not decide in this instance whether waiver flows from failure to file the motion as required by the rule. The language of this rule is persuasive and, under Wyo.R.Crim.P. 41(g) and 12(g), effective March 24, 1992, the State's argument of waiver would be even more persuasive .
For this case, however, we need only determine whether the trial counsel's conduct was ineffective and if that ineffectiveness resulted in prejudice to the defendant.
Dickeson , 843 P.2d at 610-11 (footnote omitted, emphasis added).
[¶31] Our decisions in Hadden and Dickeson foreshadowed our ruling in this case. We adopt the reasoning of the Tenth Circuit Court of Appeals, and that of the majority of federal circuit courts of appeal, and conclude that the failure to assert an objection or defense through a Rule 12(b) -required pretrial motion is a bar to appellate review of the claim unless good cause is shown for the failure to make the required filing.[4] See United States v. Burke , 633 F.3d 984, 988-89 (10th Cir. 2011) ( Rule 12 's waiver is absolute and precludes Rule 52 plain error review); United States v. Rose , 538 F.3d 175, 180 (3rd Cir. 2008) (noting most courts adhere to the waiver approach).
[¶32] In Burke , the Tenth Circuit recognized that it had sent mixed messages in its Rule 12 cases by at times applying an absolute waiver and in other instances applying a Rule 52 plain error review. Burke , 633 F.3d at 990 ; see also Rose , 538 F.3d at 176 (Third Circuit noting its unwitting confusion of Rule 12 review by use of conflicting approaches). In resolving the inconsistencies in its Rule 12 reviews, the Tenth Circuit looked to both the plain text of Rules 12 and 52 and the policy underlying the Rule 12 waiver. Concerning the text of the rules, it observed:
When read alone, both Rule 52(b) and Rule 12 appear applicable to pretrial suppression motions. When considered together, however, Rule 12 's waiver provision must prevail:
The latter is much more specific than is Rule 52(b) ; while Rule 52(b) states generally that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention," Rule 12(e) singles out motions to suppress, stating that a "party waives any [suppression] defense, objection, or request not raised by the [pretrial] deadline the court sets." (Emphasis added.) In this context, "we apply the well-settled maxim that specific statutory provisions prevail over more general provisions." Chavarria v. Gonzalez , 446 F.3d 508, 517 (3d Cir. 2006) (internal quotation marks omitted). Thus we avoid "applying a general provision when doing so would undermine limitations created by a more specific provision." Varity Corp. v. Howe , 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).
*409 Rose , 538 F.3d at 182-83. Thus, under the plain text of the rules, Rule 12 's absolute waiver controls.
Burke , 633 F.3d at 989.
[¶33] We agree with this interpretation as applied to our rules. Like federal courts, we adhere to the maxim that a specific provision will control over a general one dealing with the same subject when they are in apparent conflict. Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie County Sch. Dist. No. One , 2016 WY 113, ¶ 23, 384 P.3d 679, 685 (Wyo. 2016). Wyoming's Rule 12(b)(3) specifies that motions to suppress "must be raised prior to trial." Rule 12(g) then provides that the failure to do so "shall constitute waiver thereof." This language is clear and directs a limitation on review that is more specific than Rule 52(b) 's general allowance for a plain error review. We thus conclude that Rule 12 's limitation on review applies to the Rule 12(b)(3) -specified motions in lieu of Rule 52(b).
[¶34] This interpretation is also consistent with our definition of waiver. We have said:
A waiver occurs when there is an intentional relinquishment of a known right manifested in an unequivocal manner. Cathcart v. Meyer , 2004 WY 49, ¶ 21, 88 P.3d 1050, 1060 (Wyo. 2004) ; Jensen v. Fremont Motors Cody, Inc. , 2002 WY 173, ¶ 16, 58 P.3d 322, 327 (Wyo. 2002). While the intent to waive may be implied from conduct, the conduct should speak the intent clearly. Id . Silence or delay in asserting a right without more does not constitute the unequivocal manifestation of intent required for a claim of waiver. Jensen, ¶ 20, 58 P.3d at 327-28. To support a claim of waiver there must be an obligation to speak or the silence or inaction must be of such duration that is [sic] shows an intent to yield a known right. Id .
Verheydt , ¶ 24, 295 P.3d at 1251 (emphasis added).
[¶35] Rule 12(b)(3) imposes a clear obligation to speak by mandating the filing of a pretrial motion to suppress. It follows that a failure to file the required motion in the face of such a mandate equates with a waiver.
[¶36] We also agree with the policy reasons that have been cited in support of interpreting the Rule 12 waiver as a bar to appellate review. In echoing the Fifth Circuit's analysis in United States v. Chavez-Valencia , 116 F.3d 127 (5th Cir. 1997), the Third Circuit reasoned:
After reconciling this textual reading with Fifth Circuit precedent, Chavez-Valencia examined various policy considerations that support a waiver approach. It noted that because the exclusionary rule is "not devised so much [as] a personal right of the defendant, but, instead, as an incentive to protect the public against an over-aggressive police force," the Supreme Court has "refused to apply the exclusionary rule for Fourth Amendment violations where the costs of its implementation outweigh[ ] the benefit gained by deterrence of future violations." Id . (citing United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ). It therefore examined the costs and benefits of allowing a criminal defendant to raise a suppression issue on appeal notwithstanding noncompliance with Rule 12. In doing so, it noted that "allowing appellate review of suppression claims not raised in the district court inflicts a significant cost on the criminal justice process." Id . at 131-32. Specifically, if the Government has no reason to believe the defendant will seek to suppress certain evidence, it may see no need to produce the quality or quantity of evidence otherwise needed to prevail. Id . at 132. Further, the Government will be forced on appeal to rely on an underdeveloped record in defending itself from the suppression argument. Id . And allowing a defendant to raise a suppression motion after jeopardy has attached (i.e. , after the jury has been sworn) robs the Government of its ability to appeal an adverse ruling on the suppression issue. Id. ; see also 18 U.S.C. § 3731.
Chavez-Valencia found little benefit to allowing a defendant to raise an untimely suppression issue on appeal. Specifically, this would not deter much (if any) police misconduct. It noted that, to find an effect on police misconduct, " 'we would have to *410 imagine a policeman tempted to make an unconstitutional search or seizure pausing to think and then being dissuaded by the consideration that the prospective defendant, if he is so unlucky as to have a lawyer who commits plain error in failing to file a timely pretrial suppression motion, will have another bite at the apple.' " Chavez-Valencia , 116 F.3d at 132 (quoting United States v. Brown , 663 F.2d 229, 238 (D.C. Cir. 1981) (en banc ) (Wiley, J., concurring) ). Thus the Court concluded that, in addition to Rule 12 's text and history as well as pertinent case law, policy considerations counseled in favor of a waiver approach.
Rose , 538 F.3d at 182 ; see also Burke , 633 F.3d at 989-90.[5]
[¶37] In contrast to the majority rule, the minority rule allows for a plain error review if the record is sufficiently developed to support such a review. See Rose , 538 F.3d at 181 (citing cases). We find that the majority rule more closely adheres to Rule 12 's plain language, offers greater predictability, and better serves Rule 12 's underlying policy. We therefore hold that the failure to file a W.R.Cr.P. 12(b)(3) -required motion bars appellate review of such claims, including suppression questions, unless the defendant shows good cause for failing to timely assert the claim.[6]
*411 C. Application of the Rule 12(g) Waiver
[¶38] It is undisputed that Mr. Rodriguez did not file a motion to suppress Mr. Ayers' identification or assert a due process objection before the district court. Appellate review of his claim is therefore barred unless he is able to show good cause for his failure to raise his due process claim in a timely manner.[7]
[¶39] We have held that Rule 12(g) 's language that "the court for cause shown may grant relief from the waiver," means the trial court. Cox , 964 P.2d at 1238 ; see also LDO v. State , 858 P.2d 553, 559 (Wyo. 1993) (noting Rule 12 affords discretion to trial court "to grant relief from the failure to make the motion for good cause shown").[8] Because Mr. Rodriguez did not assert his due process claim until his appeal to this Court, he of course did not make a good cause showing before the district court. We agree with the Seventh Circuit's view that under such circumstances it is appropriate for the reviewing court to ask if the trial court would have abused its discretion had it not found good cause. Daniels , 803 F.3d at 352. Another option would be to remand for a good cause determination by the district court. See Rose , 538 F.3d at 184 (citing United States v. Weathers , 186 F.3d 948, 958-59 (D.C. Cir. 1999) ) ("Where a defendant argues 'cause' for the first time on appeal, and the proper disposition is not clear to us, we could remand the case for an evidentiary hearing."). In this case, we find the record is clear, and we therefore see no need for a remand.
[¶40] If "the record reveals 'no impediment to the defendant's ability to [have] raise[d] the issue' prior to appeal," good cause for failing to raise the issue in a timely manner cannot be found. Augustine , 742 F.3d at 1266 ; see also United States v. Baker , 713 F.3d 558, 561 (10th Cir. 2013) (quoting Burke , 633 F.3d at 989-90 ) (good cause will be found lacking if record shows that sufficient information was available to defense counsel before trial to enable him to frame suppression argument). In this case, the probable cause affidavit attached to the State's felony information showed that Agent Steward showed Mr. Rodriguez only a single photo to obtain his identification. Additionally, defense counsel's cross-examination of Mr. Ayers and Agent Steward showed that he was well acquainted with the facts surrounding the identification and the implications associated with the use of a single photo for the identification. Under these circumstances, we are unable to find good cause for Mr. Rodriguez's failure to raise his due *412 process claim before trial. His claim is therefore waived.
[¶41] Because the parties did not argue waiver in the context of Rule 12, we take this opportunity to address Mr. Rodriguez's remaining arguments that: 1) he did not intentionally relinquish his due process claim, so no waiver can be found; and 2) his due process claim is fundamental and should therefore be considered on appeal despite his failure to preserve it below. We reject both arguments.
[¶42] In support of his first argument, Mr. Rodriguez points to our distinction between a waiver as an intentional relinquishment or abandonment of a claim and a forfeiture as the failure to timely assert a claim. See Nunamaker , ¶ 9, 401 P.3d at 866. He argues that nothing in the record shows he intentionally relinquished or abandoned his claim and a waiver therefore cannot be found. We disagree. As we discussed above, a waiver will be found when there is an obligation to speak and a failure to do so. Verheydt , ¶ 24, 295 P.3d at 1251. Rule 12(b)(3) imposed a clear obligation to speak by mandating the filing of a pretrial motion to suppress, and Mr. Rodriguez's failure to file the required motion was therefore a clear waiver.[9]
[¶43] As to Mr. Rodriguez's argument that his claim should not be deemed waived because it is fundamental, we again disagree. Mr. Rodriguez contends his claim is fundamental because Mr. Ayers' identification of him was the only identification evidence and his challenge goes to the integrity of that evidence. First, Mr. Ayers' testimony was not the only identification evidence. Agent Fish testified that she knew Mr. Rodriguez from numerous contacts with him during her twenty years in law enforcement and that during the controlled buy she recognized his voice, how he stood, how he acted, and how he conducted himself. Agent Steward testified that he saw Mr. Rodriguez's features when he passed through the lighted doorway of the Ralston bar and again lit by the taillight of a truck and recognized him from photographs he had seen of him previously. As to the integrity of the evidence, were we to accept Mr. Rodriguez's argument, our holding would essentially be that challenges to the integrity of evidence may never be waived. Mr. Rodriguez has offered no reason we should adopt such a rule, and we decline.[10]
CONCLUSION
[¶44] We hold that a defendant's failure to assert an objection or defense through a pretrial motion required by W.R.Cr.P. 12(b)(3) is a bar to appellate review of the claim unless good cause is shown for the failure to make the required filing.[11] Mr. Rodriguez did not file the Rule 12(b)(3) -required motion to suppress the identification evidence against him and did not show good cause for that failure. He therefore waived appellate review of his claim. Affirmed.
BURKE, Justice, concurring in part and dissenting in part, in which FOX, Justice, joins.
[¶45] I agree with the majority that the conviction should be affirmed. I write separately because I disagree with the majority's holding that the failure to file a pretrial motion to suppress evidence results in waiver *413 under W.R.Cr.P. 12(b)(3) and bars review by this Court. I have two basic concerns. First, the issue was not raised and should not be addressed. Second, the failure to file a timely motion to suppress under W.R.Cr.P. 12 is not a "waiver" barring appellate review. It is a "forfeiture" and any claim of error should be reviewed under our plain error standard.
[¶46] As a general principle, issues not raised or briefed should not be considered by this Court. In our adversary system,
appellate courts do not sit as self-directed boards of inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. Carducci v. Regan , 714 F.2d 171, 177 (D.C. Cir. 1983). We thus ordinarily have no right to consider issues not raised by a party in either briefing or argument, both because our system assumes and depends upon the assistance of counsel, see id. , and because of the unfairness of such a practice to the other party, see, e.g. , McBride v. Merrell Dow and Pharmaceuticals, Inc. , 800 F.2d 1208, 1210 (D.C. Cir. 1986).
United States v. Pryce , 938 F.2d 1343, 1352-53 (D.C. Cir. 1991) (Silberman, J., dissenting in part) (quotation marks omitted).
[¶47] Our appellate rules recognize and implement this principle in several ways. "[I]ssues presented for review" must be identified. W.R.A.P. 7.01(e) ; see also 7.02, 7.03. Briefs in support of a party's position must contain argument setting forth the party's "contentions with respect to the issues presented and the reasons therefor, with citations to the authorities, statutes and parts of the designated record on appeal relied on." W.R.A.P. 7.01(g)(1) ; see also W.R.A.P. 7.02, 7.03. If a party fails to comply with those requirements, sanctions, including a "refusal to consider the offending party's contentions," may be imposed against the party. W.R.A.P. 1.03(a). "Under this court's long-standing precedent, this court will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." State v. Campbell Cnty. School Dist. , 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo. 2001). We have "consistently refused to address claims not supported by cogent argument or citation to pertinent authority whether a pro se litigant or counsel files the brief." Kinstler v. RTB S. Greeley, Ltd. LLC , 2007 WY 98, ¶ 10, 160 P.3d 1125, 1128 (Wyo. 2007).
[¶48] There are good reasons for these rules. Notice and the opportunity to be heard are the cornerstones of due process. Verheydt v. Verheydt , 2013 WY 25, ¶ 23, 295 P.3d 1245, 1251 (Wyo. 2013) ; Kelly v. Kilts , 2010 WY 151, ¶ 17, 243 P.3d 947, 952 (Wyo. 2010). Sua sponte decision making denies parties impacted by the decision of the opportunity for input. The lack of input deprives the Court of potential factual information, legal authority, and perspective to make a fully-informed decision. Stability is placed at risk and, ultimately, so is public trust and confidence in the decisions from this Court. "To all intents and purposes the Court's present action amounts to a summary reversal ... without argument. I am bound to say that what has been done is not likely to promote respect either for the Court's adjudicatory process or for the stability of its decisions." Mapp v. Ohio , 367 U.S. 643, 677, 81 S.Ct. 1684, 1704, 6 L.Ed.2d 1081 (1961) (Harlan, J., dissenting).
[¶49] I recognize that there are exceptions to the general rule. As Justice Scalia put it, "[T]here must be enough play in the joints." United States v. Burke , 504 U.S. 229, 246, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring). We have justified decisions on issues not raised to protect the integrity of the judicial process. Allen v. Allen , 550 P.2d 1137, 1142 (Wyo. 1976). We have also engaged in the practice to protect "fundamental rights." Matter of BJB , 888 P.2d 216, 219 (Wyo. 1995). Subject matter jurisdiction may be raised at any time, even when not raised by the parties. Matter of Adoption of L-MHB , 2018 WY 140, ¶ 9, 431 P.3d 560, 564 (Wyo. 2018) (citing Matter of Mears , 2018 WY 109, ¶ 17, 426 P.3d 824, 828 (Wyo. 2018) ). There may be other exceptions. Obviously, however, there must be limitations on use of that authority, otherwise the rules requiring issue identification and cogent argument become meaningless.
[¶50] In the present case, the applicability of Rule 12 's waiver provision was not raised *414 as an issue. The majority's new issue does not involve a fundamental right, does not impact the integrity of the judicial system in general, does not involve a "point so fundamental" that it must be recognized, and is not required to further the "ends of justice." Mr. Rodriquez had no notice of the issue and never had the opportunity to weigh-in. This is not a case where the Court is simply applying clear precedent that has been ignored by the parties to the undisputed facts of a case.[12] Instead, as will be discussed, the Court is creating a new rule of law overturning nearly 30 years of precedent permitting plain error review. It reaches its decision based upon federal precedent that, at best, is in flux and creates a new rule for determination of waiver that has never been endorsed by this Court or any precedent cited by the majority. The new rule has been adopted without being subjected to the stringent review provided by the adversarial process. This is not an appropriate case to depart from our general principles of appellate decision making. The issue was not raised and should not be addressed.
Waiver v. Forfeiture
[¶51] If we are going to address the issue, I agree with the majority that the critical question involves the distinction between "waiver" and "forfeiture." Waiver is the "intentional relinquishment or abandonment of a known right." Nunamaker v. State , 2017 WY 100, ¶ 9, 401 P.3d 863, 866 (Wyo. 2017). Forfeiture is the "failure to make a timely assertion of a right." Id. An error that is waived "is not subject to appellate review." Id. An error that is forfeited is "reviewable for plain error." Id. I disagree with the majority that the mere failure to file a motion to suppress, by itself, satisfies the criteria necessary to constitute a waiver. Standing alone, the failure to file the motion is not an "intentional relinquishment or abandonment of a known right." It is, instead, a "failure to make a timely assertion of a right." It is a forfeiture.
[¶52] The majority terms the failure to file a timely motion to suppress as "silence" and then combines that failure with the obligation to file a timely motion required by the rule to conclude that the "intentional relinquishment of a known right" criteria has been satisfied. According to the majority: " Rule 12(b)(3) imposes a clear obligation to speak by mandating the filing of a pretrial motion to suppress. It follows that a failure to file the required motion in the face of such a mandate equates *415 with a waiver." I disagree. Such an interpretation eviscerates the distinction between waiver and forfeiture. Under the majority's approach, every failure to comply with a time requirement imposed by a rule would be a "waiver" and bar appellate review for plain error.
[¶53] Our decision in Verheydt , 295 P.3d 1245, upon which the majority relies, does not support that leap. Verheydt was a divorce action. Husband complained on appeal that his due process rights had been violated because the district court made its decision without providing an opportunity to present evidence. We rejected the claim finding that husband had waived his right to an evidentiary hearing. In doing so, we confirmed that waiver requires "an intentional relinquishment of a known right manifested in an unequivocal manner." Id. , ¶ 24, 295 P.3d at 1251. We recognized that the "intent to waive" may be implied from conduct but cautioned that "the conduct should speak the intent clearly. ... Silence or delay in asserting a right without more does not constitute the unequivocal manifestation of intent required for a claim of waiver." Id. (citing Jensen v. Fremont Motors Cody, Inc. , 2002 WY 173, ¶ 20, 58 P.3d 322, 327-28 (Wyo. 2002) ) (emphasis added). In Jensen , we made it clear that a finding of waiver based upon "mere silence" does not constitute a waiver. "We cannot point to a single instance where we have held that mere silence and delay in asserting a claim without more constitutes the unequivocal manifestation of intent required for a claim of waiver." Id. , ¶ 20, 58 P.3d at 328 (emphasis in original).
[¶54] We found waiver in Verheydt because the husband had expressly waived his right to a hearing:
In the present case, the record clearly supports Wife's claim that Husband waived his right to an evidentiary hearing. The parties' settlement agreement contains an express waiver by Husband of a hearing on Wife's complaint for divorce including waiver of notice, the right to be heard and the right to be present and cross-examine witnesses. Husband expressly acknowledged in the agreement that he waived his rights with the advice of counsel, having weighed the facts and circumstances and with a clear understanding of that to which he was agreeing. He also expressly acknowledged that he did so freely, voluntarily, without duress and after having adequate time to carefully consider all of the provisions of the parties' agreement.
Id. , ¶ 27, 295 P.3d at 1252. Additionally, the Court found that
the parties' attorneys advised the court prior to the hearing that their clients were willing to proceed without an evidentiary hearing and to present their respective positions through argument by counsel. Accordingly, the district court convened the hearing and asked to hear the parties' "arguments." Neither Husband nor his attorney objected, nor did they request a trial, evidentiary hearing, or the opportunity to present witnesses or other evidence.
Id. , ¶ 29, 295 P.3d at 1252. Verheydt simply does not support the majority's conclusion that a failure to file a timely motion to suppress under Rule 12, by itself, is an "intentional relinquishment of a known right."[13]
[¶55] The majority's approach also conflicts with our precedent applying a plain error review despite a party's failure to timely file a motion to suppress required by W.R.Cr.P. 12. See Lobatos v. State , 875 P.2d 716, 721 (Wyo. 1994) ("On three fronts, appellant attacks the validity of the search warrant as both constitutionally and statutorily inadequate. Because appellant's counsel offered no pre-trial motion to suppress the evidence gained during the search and no objection to admission at trial, we consider appellant's claim under the plain error standard.").[14] The new rule announced by the majority essentially overrules this precedent and, in doing *416 so, implicates the doctrine of stare decisis. The majority has not attempted to apply stare decisis principles in its analysis, perhaps because it considers the issue not "settled."[15] However, I would respectfully disagree. Our precedent is uniform and long-standing. We have consistently applied a plain error review to claims of error involving the failure to file a motion to suppress. Litigants and counsel are entitled to rely on that precedent.[16]
[¶56] W.R.Cr.P. 12 is not the only rule specifying that action must be taken in a timely fashion and that the failure to do so impacts appellate rights. For example, W.R.E. 103 mandates the timely assertion of objections. Under the rule, the specific grounds for the objection must be stated if a party is attempting to prevent evidence from being admitted, and an offer of proof must be made if a ruling excludes evidence. If a party fails to comply with the rule, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." W.R.E. 103[17] (emphasis added). Under the majority's approach, failure to comply with the rule should *417 be treated as a "waiver." The failure to timely object or make the required offer of proof would satisfy the silence requirement and the existence of the requirement in the rule would provide the "obligation to speak." The language of the rule that "[e]rror may not be predicated," would provide additional support for concluding that a "waiver" has occurred.[18] This Court, however, treats the failure to timely object as a "forfeiture" not an "intentional relinquishment of a known right" and routinely reviews for plain error.[19] See, e.g. , Hathaway v. State , 2017 WY 92, ¶ 29, 399 P.3d 625, 634 (Wyo. 2017) (failure to object to admission of defendant's interview with police reviewed for plain error); Carrier v. State , 2017 WY 88, ¶ 56, 400 P.3d 358, 370 (Wyo. 2017) (failure to object to alleged "victim impact testimony" reviewed for plain error); Villarreal v. State , 2017 WY 81, ¶ 10, 398 P.3d 512, 516 (Wyo. 2017) (failure to make Confrontation Clause objection reviewed for plain error).
[¶57] W.R.Cr.P. 30 mandates timely objections to jury instructions and contains language purporting to bar an appellate challenge if a timely objection is not made. The rule provides: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed[.]" W.R.Cr.P. 30(a) (emphasis added).[20] Nevertheless, we also routinely review appellate challenges to jury instructions for plain error when there has been no objection.
The spirit and policy of our rules with reference to jury instructions is to apprise and inform the district court of the purpose of offered jury instructions and of objections to proposed jury instructions so that the court may have an opportunity to correct and amplify them before submission to the jury. Alberts v. State , 642 P.2d 447, 453 (Wyo. 1982) ; see also Sybert v. State , 724 P.2d 463, 467 (Wyo. 1986) (quoting Haley v. Dreesen , 532 P.2d 399, 402 (Wyo. 1975) ). Had the defense objected to the jury instruction before it was given to the jury, the district judge could have easily corrected the omission. However, since no objection was made, the alleged error was not preserved as an issue on appeal, unless it rises to the level of plain error.
Ortega v. State , 966 P.2d 961, 966 (Wyo. 1998) (emphasis added). See, e.g. , *418 Johns v. State , 2018 WY 16, ¶ 12, 409 P.3d 1260, 1264 (Wyo. 2018) ; Mendoza v. State , 2013 WY 55, ¶ 9, 300 P.3d 487, 490 (Wyo. 2013) ; Bloomer v. State , 2010 WY 88, ¶ 9, 233 P.3d 971, 974 (Wyo. 2010). In other words, despite the clear obligations to speak set forth in the rule and the failure to comply with the rule, we treat the error as "forfeited," not "waived." The majority's approach to waiver under W.R.Cr.P. 12 is difficult to square with our treatment of plain error review under W.R.Cr.P. 30.[21]
[¶58] Admittedly, Rule 12(g), employs the specific term waiver. "Failure by a party to raise defenses or objections ... which must be made prior to trial, ... shall constitute waiver thereof." W.R.Cr.P. 12(g). It is this term, combined with the U.S. Supreme Court's recognition of the distinction between "waiver" and "forfeiture" in United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993), that has caused the confusion regarding the proper approach to appellate review when there has been a failure to comply with Rule 12.
When the term "waiver" first appeared in Rule 12(b)(2) in 1944, and then moved to Rule 12(f) in 1975, and still later to Rule 12(e), the term "may have been unremarkable," 1A Charles Alan Wright et al., Federal Practice and Procedure: Federal Rules of Criminal Procedure § 193 (4th ed. 2008), because the Supreme Court had not articulated a clear differentiation between a "waiver" and a "forfeiture." See United States v. Olano , 507 U.S. 725, 733-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " Id. at 733, 113 S.Ct. 1770 (quoting Johnson v. Zerbst , 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ). Since Olano , the term "waiver" in the context of Rule 12(e) caused great confusion among circuit courts about how the rule restricts appellate review. Wright et al., supra § 193. Prior to the 2014 rule revision, we were inconsistent as well. Often we treated a party's failure to file a timely pretrial motion as a "true waiver," sometimes we considered the failure to file a pretrial motion as a forfeiture subject to plain-error review, sometimes we avoided resolving the proper characterization and conducted plain-error review in the alternative, and sometimes we examined whether the appellant had shown good cause for the failure to file a timely pretrial motion.
United States v. Soto , 794 F.3d 635, 648-50 (6th Cir. 2015) (footnotes omitted). As a result of this confusion, and in recognition that Rule 12 never required a "true waiver," Federal Rule 12 was amended, and the term "waiver" was removed from the rule.
In an apparent attempt to add some clarity to these muddy waters, the Advisory Committee recently recommended omitting the "non-standard use of the term 'waiver' " from Rule 12. Advisory Committee on Criminal Rules, Minutes 3 (Apr. 25, 2013) (hereinafter April 25, 2013 Advisory Committee Minutes ). The Advisory Committee made clear the reason for the recommended change:
New paragraph (c)(3) governs the review of untimely claims, previously addressed in Rule 12(e). Rule 12(e) provided that a party "waives" a defense not raised within the time set under Rule 12(c). Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely *419 fashion. Accordingly, to avoid possible confusion the Committee decided not to employ the term "waiver" in new paragraph (c)(3).
Soto , 794 F.3d at 650. The Soto court determined that the failure to file a motion under the amended Rule 12 is not "a waiver unless the circumstances of the case indicate that the defendant intentionally relinquished a known right." Id. , 794 F.3d at 655. Where the requisite showing is not made, "plain-error review applies." Id.[22] We should reach the same conclusion under W.R.Cr.P. 12. Such an approach maintains the distinction between "forfeiture" and "waiver" recognized by the U.S. Supreme Court in 1993 in Olano and adopted by this Court in 2015 in Toth v. State , 2015 WY 86A, 353 P.3d 696 (Wyo. 2015). It is consistent with our precedent applying a plain error standard of review when the required Rule 12 motion to suppress was not filed and in cases involving the failure to make timely objections under W.R.E. 1.03 and W.R.Cr.P. 30. It also preserves a defendant's rights to a plain error review under W.R.Cr.P. 52 and W.R.A.P. 9.05.
[¶59] The majority relies primarily on the Tenth Circuit decision in United States v. Burke , 633 F.3d 984 (10th Cir. 2011), to support its holding. The precedent is not persuasive for several reasons. The Tenth Circuit's historical treatment of "waiver" under Rule 12 has not been a model of clarity[23] and illustrates the "great confusion among circuit courts" referenced by the Advisory Committee in its explanation for deletion of "waiver" from Rule 12. Soto , 794 F.3d at 649. The court opted for an interpretation that established a "complete bar for noncompliance" despite recognizing that the "complete bar" will "include some acts that under Olano would only be an unintentional forfeiture." Burke , 633 F.3d at 990. The court reached conclusions from the statutory history of Rule 12 that were ultimately not warranted in light of the 2014 amendments eliminating "waiver" from Rule 12.[24] The court incorrectly equated the "good cause" provision of Rule 12 with the protections afforded by plain error review in determining that its interpretation provided adequate protections to a defendant.[25] And, finally, the continued viability *420 in the Tenth Circuit of the Burke precedent is questionable.
[¶60] Since Burke was decided, Rule 12 was amended to delete the term "waiver" to eliminate confusion and in recognition of the Olano distinction between "waiver" and "forfeiture." The Tenth Circuit has recognized that the amendment may have significance. The majority relies upon United States v. Vance , 893 F.3d 763 (10th Cir. 2018) and claims that, "[T]he [2014] revision does not affect the conclusion [the Tenth Circuit] reached in Burke ." The court in Vance , however, did not reach that conclusion. In Vance , the court was not willing to revisit its holding in Burke because the issue was not raised by Vance.
Given the Committee notes, this court has indicated, albeit in unpublished dispositions, that Burke 's reasoning survives the 2014 amendments to Rule 12. See, e.g. , United States v. Shrader , 665 F. App'x 642, 648-49 & n.6 (10th Cir. 2016) ; United States v. Franco , 632 F. App'x 961, 963-64 & 963 n.1 (10th Cir. 2015). Although two circuits have reached the opposite conclusion, United States v. Soto , 794 F.3d 635, 648-52, 655 (6th Cir. 2015), and United States v. Sperrazza , 804 F.3d 1113, 1119 (11th Cir. 2015), Vance has not argued that the 2014 amendments to Rule 12 render Burke no longer good law. Absent any argument at all on the part of Vance about the continued validity of Burke , this panel remains bound by that decision. Thus, the waiver rule set out in Burke and Rule 12(c)(3) controls the resolution of this issue.
Vance , 893 F.3d at 769 n.5 (emphasis added). In another decision subsequent to Burke , the court opted to not apply the Burke "waiver" in a case where no motion to suppress had been filed:
Mr. Elliott may even have committed two separate waivers of the argument in district court.
First, Mr. Elliott may have waived the argument in district court by failing to mention a potential ethical violation in his motion to suppress. This omission implicates Federal Rule of Criminal Procedure 12(c)(3). In two unpublished opinions, we have held that under Rule 12(c)(3), waiver occurs when a defendant fails to adequately present an argument in a motion to suppress. In these cases, we found waivers without determining whether the omission was intentional or inadvertent. See United States v. Shrader , 665 Fed. Appx. 642, 648-49 (10th Cir. 2016) (unpublished); United States v. Franco , 632 Fed. Appx. 961, 963-64, 963 n.1 (10th Cir. 2015) (unpublished). But see United States v. Soto , 794 F.3d 635, 648-52, 655 (6th Cir. 2015) (concluding that under the 2014 amendments to Federal Rule of Criminal Procedure 12, an untimely pretrial motion listed in Rule 12(b)(3) no longer constitutes a waiver); United States v. Sperrazza , 804 F.3d 1113, 1119 (11th Cir. 2015) (same).
United States v. Elliott , 684 Fed. Appx. 685, 688 n.4 (10th Cir. 2017) (unpublished).
[¶61] Although the court could have employed the Burke Rule 12 waiver interpretation to bar appellate review in Elliott , it did not. The court determined that the issue had been waived because the appellant did not raise a plain error challenge on appeal. It also opted to address the issue on the merits:
*421 In sum, we reject Mr. Elliott's argument for two reasons:
1. Mr. Elliott's argument is waived. At a minimum, he forfeited the argument in district court and then waived the argument on appeal by failing to ask for plain-error review. Therefore, even if Mr. Elliott's underlying argument had been meritorious, it would not support reversal.
2. Mr. Elliott's argument fails on the merits. Even if we were to credit his factual allegations, the Assistant U.S. Attorney would not have violated Wyoming's ethical rules.
Id. , 684 Fed. Appx. at 695.
[¶62] The majority also relies upon Burke to find a conflict between the "waiver" provisions of Rule 12 and the plain error review provided under W.R.Cr.P. 52. There is no conflict. In Burke , the purported conflict existed because the court determined that failure to file a motion to suppress is "waived (i.e., completely barred)." Id. , 633 F.3d at 988. There is no conflict, however, if the failure to file a Rule 12 motion to suppress is deemed a forfeiture. Under both Rule 12 and W.R.Cr.P. 52, the error would be reviewable for plain error.
[¶63] The majority adopts the analysis and policy reasons set forth in United States v. Rose , 538 F.3d 175, 182 (3d Cir. 2008), to support its decision. See majority opinion, ¶ 36. The Tenth Circuit in Burke also relied on that analysis. See Burke , 633 F.3d at 989-90. I have previously indicated my disagreement with the Burke decision, but a brief comment about the federal policy justifications adopted by the majority is also warranted.
[¶64] I understand that we have previously recognized that federal authority interpreting procedural rules similar to ours, may be "highly persuasive." See majority opinion, ¶ 31 n.4. That does not mean, however, that we should not make an effort to square the policy reasons supporting the federal interpretation with our precedent and statutory scheme. Two federal policy justifications adopted by the majority stand out.
[¶65] One involves the Government's right to appeal a decision granting a motion to suppress. "[A]llowing a defendant to raise a suppression motion after jeopardy has attached ... robs the Government of its ability to appeal an adverse ruling on the suppression issue." Rose , 538 F.3d at 182. In federal court, the prosecution is entitled, by statute, to appeal an adverse determination of a motion to suppress. 18 U.S.C. § 3731.[26] We have no similar statute in Wyoming. See Crozier v. State , 882 P.2d 1230, 1236 (Wyo. 1994) ; but see State v. Deen , 2015 WY 5, 340 P.3d 1036 (Wyo. 2015) (entertaining a petition for writ of review filed by the State after the district court granted the defendant's motion to suppress).
[¶66] The other policy justification is more concerning. It involves application of the exclusionary rule. Under this policy, plain error review should be denied because it does not further the deterrent purposes of the exclusionary rule. I disagree with the analysis *422 leading to that conclusion.[27] More significantly, we have not recognized a good faith exception to the exclusionary rule under Article 1, Section 4 of the Wyoming Constitution[28] and have never applied it in our previous cases permitting a plain error challenge, despite the failure to file a motion to suppress in compliance with Rule 12. To the extent that police deterrence is a proper consideration for determining whether the exclusionary rule applies, I would conclude that permitting plain error review helps guarantee that misconduct will not be ignored. In any event, it is an important issue that may have ramifications in future cases coming before this Court involving application of the exclusionary rule under both the United States and Wyoming Constitutions. We do not have an adequate basis to endorse that policy here.
[¶67] The majority also justifies its new rule by asserting that the new rule "offers greater predictability." See majority opinion, ¶ 37. I am not sure what is meant by that phrase. It is certainly clear that under the new rule, a failure to file a timely Rule 12 motion to suppress, by itself, bars appellate review. Under the new rule, it is not necessary for the State to prove conduct of a defendant that is sufficient to satisfy the "intentional relinquishment of a known right" criteria. Under that view, the rule does offer greater predictability. But the adoption of the new rule does not eliminate all appellate opportunities for review of the same issues that could be presented under a plain error review. Those same issues could be raised in a claim of ineffectiveness of counsel. See Starr v. State , 888 P.2d 1262, 1264-65 (Wyo. 1995) ; Lobatos , 875 P.2d at 721 ; Dickesonv. State , 843 P.2d 606, 610-11 (Wyo. 1992). In light of the new rule, however, claims previously raised as plain error must be brought as ineffectiveness claims regardless of whether additional record development is necessary.[29]
[¶68] There is no question that W.R.Cr.P. 12 requires the timely submission of motions to suppress. The rule, however, does not state that noncompliance precludes plain error review. In arriving at its conclusion that appellate review is barred, the majority primarily focuses on the policies underlying W.R.Cr.P. 12. But the rule should not be interpreted in isolation. It must be construed in conjunction with the other Rules of Criminal Procedure and our Rules of Appellate Procedure.
[¶69] W.R.Cr.P. 2, entitled "Purpose and construction," establishes the proper framework for construction of our Rules of Criminal Procedure. "These rules are intended to provide for the just determination of every criminal proceeding." Id. (emphasis added). As important as the timely submission of motions and objections may be, the rules also recognize that there will be occasions when a failure to comply with the rules will occur. The rules make allowances for those situations by providing for plain error review. If the error "affect[s] substantial rights" it "may be noticed although ... not brought to *423 the attention of the court." W.R.Cr.P. 52. The same protection is provided in Rule 9.05, W.R.A.P.
[¶70] Plain error review provides a safety net for appellate review of errors "affecting a substantial right" and establishes a mechanism for implementing the goal of "just determination of every action." The majority's new interpretation eliminates this important protection. Under the majority's construct, a failure to file a timely motion to suppress in accordance with W.R.Cr.P. 12, by itself, bars appellate consideration of errors even if the errors "affect substantial rights." Such an interpretation undermines the very purpose of the rules.

A supervisory agent also assisted in the operation, but his involvement was not detailed in the record and he did not testify at Mr. Rodriguez's trial. We will therefore limit our discussion to the roles of Agents Fish and Steward.

Concerning the photograph of Mr. Rodriguez, Agent Steward testified:
Q. Did you have this photograph, before you conducted the controlled purchase, with you?
A. No, we did not.
Q. Why didn't you?
A. Because we didn't know Mr. Rodriguez was going to be present at the controlled purchase.
Q. Had you have known somehow that Mr. Rodriguez would have been present, would you have had a photograph of him?
A. If we would have known he was going to be there, we would have attempted to get a photograph before the controlled purchase, yes.
Q. Would that be pursuant to DCI policy to obtain a photograph of participants of controlled purchases?
A. I don't know if there is a policy for that but that is what we do.
Q. Why do you do that?
A. We want to identify the person or target prior to going into the deal so we know who we are looking at, make sure the informant is talking about the correct person.

The dissent takes issue with the majority addressing the Rule 12 scope of review when the parties themselves did not directly ask the Court to interpret and apply the rule. While neither party cited Rule 12, they argued diametrically opposing standards of review in their briefing. Mr. Rodriguez argued his due process claim was subject to de novo review, while the State argued, without reference to Rule 12, that Mr. Rodriguez's failure to raise his due process claim below precluded appellate review. The standard of review is fundamental to our consideration of any appeal, and in determining the proper standard of review, this Court is not and should not be confined to the parties' offerings. As we have said on many occasions, "[w]e are at liberty to decide a case upon any point which in our opinion the ends of justice require." Bourke v. Grey Wolf Drilling Co., LP , 2013 WY 93, ¶ 38, 305 P.3d 1164, 1173 (Wyo. 2013) (quoting In re WJH , 2001 WY 54, ¶ 48, 24 P.3d 1147, 1160 (Wyo. 2001) ) ("This issue was not developed below, but '[w]e are at liberty to decide a case upon any point which in our opinion the ends of justice require.' "). Under these circumstances, where (1) the waiver issue is one of law, (2) Mr. Rodriguez had an opportunity to develop the factual record in district court, and (3) the State's failure to raise a Rule 12 waiver did not affect the appellate record, it is entirely proper for this Court to consider Rule 12 and interpret its waiver provision. See United States v. Elliott , 684 Fed. Appx. 685, 688 (10th Cir. 2017) (citing United States v. Rodebaugh , 798 F.3d 1281, 1314 (10th Cir. 2015) ) ("[W]e have discretion to raise [Defendant's] waiver sua sponte."); see also A.M. v. Holmes , 830 F.3d 1123, 1146 n.11 (10th Cir. 2016) (noting court may decide question of statutory interpretation even when not raised by the parties and observing that "such a decisional approach is particularly acceptable and proper when, as here, the matter at issue involves construing the plain terms of statutes-a quintessentially legal undertaking").

"We consider federal authority interpreting procedural rules highly persuasive when our rules are sufficiently similar or identical." CSC Group Holdings, LLC v. Automation & Elecs., Inc. , 2016 WY 26, ¶ 24, 368 P.3d 302, 308 (Wyo. 2016) (citing Baker v. Speaks , 2013 WY 24, ¶ 33, 295 P.3d 847, 855 (Wyo. 2013) ). Wyoming's W.R.Cr.P. 12, including its waiver provision, was similar to the former F.R.Cr.P. 12, before the 2014 revisions to the federal rule. As we will discuss, the 2014 revisions do not affect our analysis or conclusions.

We have cited similar policy considerations for finding a waiver in other circumstances. In particular, we have cited with favor the rule that a failure to object to foundation as to testimony or an exhibit is a waiver, because the party offering the evidence might have been able to fix any later-claimed deficiency in foundation if there had been a timely objection. Young v. State , 2016 WY 70, ¶¶ 16-18, 375 P.3d 792, 796-98 (Wyo. 2016). The same reasoning applies here. If there is no motion to suppress, and no objection at trial, why would the State go to the trouble of dealing with the unraised suppression issue at trial? The present circumstance is a case in point. If a motion to suppress the identification had been timely made, we can at least surmise that the State might have rebutted the alleged suggestiveness of the identification with a more tailored examination of the witness. In the absence of such a record, we must question whether this Court can do a meaningful plain error review. Plain error review under such circumstances may very well set a trap not only for the State, which thinks there is no challenge, but also for the defense, because of a review that cannot meaningfully be done on a plain error standard of the trial record.

We recognize that the federal Rule 12 was revised in 2014 and the waiver language was removed and replaced with: "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." F.R.Cr.P. 12(c)(3). This revision does not affect our conclusion. First, of course, Wyoming's rule has not been revised to remove the waiver language. Second, the Tenth Circuit has held that the revision does not affect the conclusion it reached in Burke .
This court is aware that at the time United States v. Burke was decided, Rule 12 used the term "waiver" in describing the consequences of a failure to file a timely suppression motion and that the current version of Rule 12, adopted in 2014, omits the term. As Burke made clear, however, the determination that a failure to timely file a suppression motion amounted to a waiver was not based exclusively on the inclusion of the term "waiver" in Rule 12. 633 F.3d at 989-90. Instead, it was supported by "a number of policy reasons for requiring defendants to move to suppress evidence prior to trial and for deeming their failure to do so a waiver." Id . at 989 (quotation omitted). Furthermore, the Advisory Committee notes accompanying the 2014 amendments to Rule 12 make clear that the intent of the drafters in removing the term was not to render failures to file timely suppression motions invariably subject to plain error review. Instead, the purpose was to make clear that a finding of intent on the part of the defendant was not a necessary predicate to Rule 12 's application:
New Paragraph (c)(3) governs the review of untimely claims, previously addressed in Rule 12(e). Rule 12(e) provided that a party "waives" a defense not raised within the time set under Rule 12(c). Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion. Accordingly, to avoid possible confusion the Committee decided not to employ the term "waiver" in new paragraph (c)(3).
Given the Committee notes, this court has indicated, albeit in unpublished dispositions, that Burke's reasoning survives the 2014 amendments to Rule 12. See, e.g. , United States v. Shrader , 665 F. App'x 642, 648-49 & n.6 (10th Cir. 2016) ; United States v. Franco , 632 F. App'x 961, 963-64 & 963 n.1 (10th Cir. 2015). Although two circuits have reached the opposite conclusion, United States v. Soto , 794 F.3d 635, 648-52, 655 (6th Cir. 2015), and United States v. Sperrazza , 804 F.3d 1113, 1119 (11th Cir. 2015), Vance has not argued that the 2014 amendments to Rule 12 render Burke no longer good law. Absent any argument at all on the part of Vance about the continued validity of Burke , this panel remains bound by that decision. Thus, the waiver rule set out in Burke and Rule 12(c)(3) controls the resolution of this issue
United States v. Vance , 893 F.3d 763, 769 n.5 (10th Cir. 2018) ; see also United States v. Daniels , 803 F.3d 335, 352 (7th Cir. 2015) (failure to file timely motion under revised rule means claim will not be considered unless good cause shown).

We note that while Mr. Rodriguez responded to the State's waiver argument by asserting his failure to raise his due process claim below was a forfeiture, not a waiver, his only suggestion that the Court should review for plain error came during oral argument. In his briefing, he neither asserted plain error nor offered a plain error analysis. Under these circumstances, even if plain error review were available, we would not undertake such a review. See Doyle , 954 P.2d at 975 (citing Billis v. State , 800 P.2d 401, 433-34 (Wyo. 1990) ) ("In cases such as this, where the appellant has failed to timely raise objections, has not argued plain error, and has not supported his allegations with the record, we decline to consider the issue further."); see also United States v. Lamirand , 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) (quoting Richison v. Ernest Grp., Inc. , 634 F.3d 1123, 1131 (10th Cir. 2011) ) ("[T]he failure to argue for plain error and its application on appeal ... surely marks the end of the road for an argument for reversal not first presented to the district court.").

It is less clearly decided in the federal circuits whether "the court" refers to the trial court, the appellate court, or both. See 1A Charles Alan Wright et al., Fed. Prac. & Proc. Crim . § 193 (4th ed.) (Sept. 2018 update) ("Whether a defendant who fails to file a timely motion can attempt to show 'good cause' pursuant to Rule 12(c)(3) -old Rule 12(e) -for the first time in the court of appeals is unsettled."). The Tenth Circuit appears to make the determination on appeal by reviewing the record for cause rather than looking to the district court's exercise of discretion on the question. See, e.g. , United States v. Augustine , 742 F.3d 1258, 1266 (10th Cir. 2014).

By answering this question, we do not mean to suggest that Rule 12 itself requires a separate showing of an intent to relinquish a claim. Rule 12 requires only a showing that a pretrial motion required by the rule was not filed and that good cause was not shown for the failure to timely file. See Vance , 893 F.3d at 769 n.5 (quoting Rule 12 Advisory Committee Notes) ("Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) [W.R.Cr.P. 12(g) ] has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion.").

We again, by answering this question, do not mean to suggest that whether an issue is fundamental is a Rule 12-required inquiry. It simply is not. The United States Supreme Court has recognized that Rule 12 will operate to effect a waiver even where the defendant alleges "the deprivation of a substantial constitutional right." Davis v. United States , 411 U.S. 233, 243, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216 (1973).

The Court's holding in this case applies to Rule 12-required motions only and should not be interpreted to apply broadly as suggested by the dissent.

For example, in Allen , we invoked the doctrine of judicial estoppel sua sponte to preclude a litigant from "play[ing] fast and loose with the courts":
The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings[.]
... Defendant's statements in the previous action are the very highest order of evidence against him and are entitled to judicial sanctity. He cannot play hanky-panky with the courts of this state and thus interfere with the integrity of the judicial system. See Parkinson v. California Co. , 233 F.2d 432, 437-438 (10th Cir. 1956) [.]
We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it.
Allen , 550 P.2d at 1142 (footnotes omitted). Allen was subsequently quoted in two cases relied upon by the majority, Bourke v. Grey Wolf Drilling Co., LP , 2013 WY 93, 305 P.3d 1164 (Wyo. 2013), and In re WJH , 2001 WY 54, 24 P.3d 1147 (Wyo. 2001). See majority opinion, n.3. Both are distinguishable and provide little support for deviation from our general appellate principles. The decision in Bourke addressed an issue akin to subject matter jurisdiction. Bourke involved the "power" of a trial court to decide a case on the merits after concluding the case must be dismissed for improper venue. "[T]he district court cannot make its order an adjudication on the merits if it lacks the power to decide the merits." Id. , ¶ 41, 305 P.3d at 1173 (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2373 (3d ed. 2008) ). In re WJH was not decided on a new issue raised sua sponte by the Court. The Allen quote was employed by the dissent. In re WJH , ¶ 48, 24 P.3d at 1160 (Golden, J., dissenting).

The Tenth Circuit decision in United States v. Burke , 633 F.3d 984 (10th Cir. 2011), which provides the foundation for the majority's holding, also does not support this conclusion. Under the majority's definition of Rule 12 waiver, all failures to file timely motions to suppress are "an intentional relinquishment of a known right." Burke found otherwise: "[I]f we interpret Rule 12 's waiver as a complete bar for noncompliance, regardless of whether that noncompliance was intentional, then the term 'waives' under Rule 12 will include some acts that under Olano would only be an unintentional forfeiture." Id. , 633 F.3d at 990.

See also, e.g. , Starr v. State , 888 P.2d 1262, 1265 (Wyo. 1995) ("Normally, this Court would summarily hold that Appellant's failure to file a pretrial suppression motion pursuant to W.R.Cr.P. 12(b)(2) constituted a waiver as provided in W.R.Cr.P. 12(g), and this Court would, under the plain error standard, review whether the district court erred by admitting the bill into evidence."), overruled on other grounds by Jones v. State , 902 P.2d 686, 691-92 (Wyo. 1995) ; Mersereau v. State , 2012 WY 125, ¶ 35, 286 P.3d 97, 112 (Wyo. 2012) ("While the appellant filed in the district court a motion to suppress his statement as involuntary, the motion was based only upon the total length of time of the interview. Thus, the substance of the appellant's claim, as presented in his appeal, is being brought for the first time before this Court. Therefore, we limit our review to a search for plain error."); Miller v. State , 2009 WY 125, ¶ 19, 217 P.3d 793, 800-01 (Wyo. 2009) ("Next, we turn to Mr. Miller's assertion that his detention was impermissible under the Fourth Amendment. Because Mr. Miller did not raise this issue with the district court, we review for plain error."); Mora v. State , 984 P.2d 477, 479 (Wyo. 1999) ("Because Appellant's counsel offered no pretrial motion to suppress the evidence gained in the search, and lodged no objection to its admission at trial, we consider Appellant's claim under a plain error standard."); Ross v. State , 930 P.2d 965, 968 (Wyo. 1996) ("Absent a pretrial motion to suppress or objection at trial, admission of evidence must amount to plain error in order to presage reversal."); Brown v. State , 953 P.2d 1170, 1175 (Wyo. 1998) ("Where the defendant has not submitted a pretrial motion to suppress or objected at trial, the admission of evidence must amount to plain error in order to warrant reversal.").

Under stare decisis, departure from precedent should occur only when necessary "to vindicate plain, obvious principles of law and remedy continued injustice" and "[w]hen precedential decisions are no longer workable, or are poorly reasoned." Arnott v. Arnott , 2012 WY 167, ¶ 29, 293 P.3d 440, 453 (Wyo. 2012) ; see also Brown v. City of Casper , 2011 WY 35, ¶ 43, 248 P.3d 1136, 1146 (Wyo. 2011). In the absence of such a showing, however, "the doctrine of stare decisis constrains us to follow precedent and not disturb settled point." Gueke v. Board of County Comm'rs , 728 P.2d 167, 171 (Wyo. 1986), overruled on other grounds by Dunnegan v. Laramie County Comm'rs , 852 P.2d 1138 (Wyo. 1993).

In an attempt to justify addressing the Rule 12 issue, the majority stresses that the issue involves the standard of review which is "fundamental" to resolution of every appeal. I view that proposition as support for application of stare decisis principles. If the issue is "fundamental," and can properly be raised sua sponte, it would seem that litigants and counsel could reasonably conclude that the issue was considered in our prior cases applying plain error review.

W.R.E. 103 states:
(a) Effect of erroneous ruling. - Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. - In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
(2) Offer of Proof. - In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
(b) Record of offer and ruling. - The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form.
(c) Hearing of jury. - In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.
(d) Plain error. - Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

We have, on occasion, referred to the failure to object as a "waiver" but nevertheless have reviewed for plain error. See, e.g. , Bradley v. State , 635 P.2d 1161, 1163-64 (Wyo. 1981) ("In his brief appellant acknowledges that, since there was no objection at trial to the introduction of the evidence, in order to warrant a reversal, it must have been plain error to allow the evidence admitted. Rules 49(b), W.R.Cr.P., 7.05, W.R.A.P. and 103 W.R.E. A failure to object constitutes a waiver of whatever error occurred, unless the error rises to the level of plain error. Leeper v. State , Wyo., 589 P.2d 379 (1979).") (footnote omitted).

It should be noted that W.R.E. 103(d) also specifically recognizes the continued viability of plain error review: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." This language is consistent with treating the failure to offer a timely objection as a forfeiture. Under the majority's approach, the language of the rule establishing a "waiver" would create an "apparent conflict" with the plain error provisions of W.R.E. 103. See majority opinion, ¶ 33 (discussing the "apparent conflict" between W.R.Cr.P. 52 (plain error) and the "waiver" language in Rule 12 ). We have never indicated that there is any internal conflict or inconsistency between the two provisions of W.R.E. 103. See also discussion at ¶ 62 infra (apparent conflict between the rules).

W.R.Cr.P. 30(a) states:
(a) At the close of the evidence or at such earlier time before or during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. Before instructing the jury the court shall conduct a formal instruction conference out of the presence of the jury at which the court shall inform counsel of the proposed action upon their requests and shall afford them an opportunity to offer specific, legal objection to any instruction the court intends to give and to offer alternate instructions. No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection. Before the argument of the case to the jury has begun, the court shall give to the jury such instructions on the law as may be necessary and the same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires.
(Emphasis added.)

According to the majority, "The Court's holding in this case applies to Rule 12-required motions only and should not be interpreted to apply broadly as suggested by the dissent." The "broad application" referred to by the majority, apparently refers to the dissent's discussions of W.R.E. 103 and W.R.Cr.P. 30, both of which contain language requiring timely action and limiting appellate rights. Under both rules, we have uniformly treated the failure to timely comply with the rule as a forfeiture and permitted plain error review. The majority makes no attempt to align its new rule for establishing waiver with the language of Rule 103 and Rule 30. Perhaps by limiting its holding to "Rule 12 only" it intends to preserve plain error review under those rules. I hope so. However, I see no basis for creation of what now appears to be a "special" rule for determining "waiver" under Rule 12.

In Soto , the Rule 12 issue involved a claim of improper joinder raised for the first time on appeal.

In Burke , the court discussed its varying approaches to Rule 12 waiver issues:
We recognize our cases have sent a mixed message, to say the least. For example, in United States v. Jones , 530 F.3d 1292, 1298 n.1 (10th Cir. 2008), we used a footnote to highlight the confusion, and then applied plain error review in a challenge to joinder. In other cases, we have applied plain error review, either invoking it while calling its application into question, or simply imposing waiver without even mentioning plain error. See, e.g. , Hamilton , 587 F.3d at 1212-14 ; Dewitt , 946 F.2d at 1502. While some of those cases could be seen as controlling, we are convinced none of them are. We take the opportunity with this case to resolve explicitly the tension between Rule 52(b) and Rule 12 where suppression motions are concerned. No previous case explicitly addresses and resolves the issue and thus no previous case has provided a clear rule for subsequent courts and litigants to follow.
633 F.3d at 990.

Although we recognize the conundrum Olano and the rules have placed on us, we still think our reading of Rule 12 is appropriate:
Rule 12 's history ... indicates that its text means what it says. As previously noted, in 1974 the Rules were changed to require-with an explicit threat of waiver-that motions to suppress be raised prior to trial in accordance with the district court's desired timetable. In 2002, well after Olano , the waiver provision of section (f) was moved to section (e) and its text was revised, but the Advisory Committee kept the term "waiver" in place. See Fed. R. Crim. P. 12 advisory committee's note to 2002 amendments. Had the drafters thought that term outdated in light of Olano or other precedent, they could have changed the term to "forfeiture," but they did not.
Rose , 538 F.3d at 183. We agree with the Third Circuit's reasoning. There has been ample opportunity to change the language of Rule 12(e) since Olano . Congress and the Supreme Court have not done so, and it is not our place to do it now.
Burke , 633 F.3d at 990-91.

According to the court: "In any event, Rule 12 itself provides a safety valve for counsel's inadvertent failure to raise an argument at the suppression hearing. The 'good cause' exception protects against a miscarriage of justice as capably as plain error review." Burke , 633 F.3d at 991. However, "good cause" sufficient to excuse the failure to file a timely Rule 12 motion connotes an event or circumstance that is outside defense counsel's control that precluded counsel's ability to file a timely motion. See United States v. Walden , 625 F.3d 961, 965 (6th Cir. 2010) ("nothing prohibited counsel from making [the] motion [to suppress] before the deadline"); United States v. Bryant , 5 F.3d 474, 476 (10th Cir. 1993) (no good cause shown because counsel "has made no allegations that ... counsel was prevented from filing the motion"); cf. McCleskey v. Zant , 499 U.S. 467, 493-94, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (in federal habeas proceeding "good cause" requires, for example, "interference by officials"); Murray v. Carrier , 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) ("good cause" in federal habeas proceeding is some "objective factor external to the defense impeded counsel's efforts to comply").
In contrast, under a plain error review, we do not consider the reasons for the failure to object. Instead, our review focuses on the harm caused by the alleged error. See Larkins v. State , 2018 WY 122, ¶ 94, 429 P.3d 28, 50 (Wyo. 2018) ("[T]he concern [in plain error review] is whether the alleged error undermines confidence in the outcome."); W.R.A.P. 9.05 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.") (emphasis added); W.R.Cr.P. 52(b) (same).

18 U.S.C. § 3731 states:
In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.
The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
The provisions of this section shall be liberally construed to effectuate its purposes.

According to the court in Rose :
Specifically, this would not deter much (if any) police misconduct. ... [T]o find an effect on police misconduct, " 'we would have to imagine a policeman tempted to make an unconstitutional search or seizure pausing to think and then being dissuaded by the consideration that the prospective defendant, if he is so unlucky as to have a lawyer who commits plain error in failing to file a timely pretrial suppression motion, will have another bite at the apple.' "
Rose , 538 F.3d at 182 (discussing United States v. Chavez-Valencia , 116 F.3d 127 (5th Cir. 1997), abrogated by United States v. Vasquez , 899 F.3d 363 (5th Cir. 2018), petition for cert. filed , No. 18-6672 (U.S. Nov. 13, 2018) ).

See Snell v. State , 2014 WY 46, ¶¶ 23-24, 322 P.3d 38, 46-47 (Wyo. 2014).

In discussing policy justifications for its new rule, the majority also relies upon our decision in Young v. State , 2016 WY 70, 375 P.3d 792 (Wyo. 2016), for the proposition that we have found waiver where there has been a failure to object to precedent. That is not an accurate reading of Young . In Young , we commented favorably on precedent from other states, but ultimately opted to forego deciding the case on that basis because the issue had not been raised. We reviewed for plain error explaining:
Accordingly, we question whether the appellant's claim is properly considered for the first time on appeal. We are reluctant to decide the case on this basis, however, because the issue was not raised or briefed by the parties. We will instead turn to the question presented, which is whether Mr. Young has established plain error.
Id. , ¶ 18, 375 P.3d at 797-98 (emphasis added).